# THE STATE ex rel. ABEL et al. v. GATES, Judge.

## In Banc, October 25, 1905.

1. **PROHIBITION: Jurisdiction: Equity: Sufficiency of Petition: Legislative Body.** Where a demurrer has been filed to a petition in a suit to restrain a city council from enacting an ordinance giving to certain persons or associations a franchise for furnishing gas to the city's inhabitants, on the ground that the consideration for the councilmen's vote is to be certain portions of the stock of the company receiving the franchise, and that demurrer has not been passed on, the Supreme Court will not prohibit the chancellor from passing on that demurrer. If the petition, though it defectively states a cause of action, yet presents a case not beyond the jurisdiction of a court of equity, the Supreme Court will not, under an apprehension that that court may not correctly decide the question, undertake to say that it does or does not state a cause of action. (Distinguishing Nagel v. Railroad, 167 Mo. 89.)

2. **LEGISLATIVE DEPARTMENT: City Council: Interference by Courts.** It is not within the power of the judiciary to enjoin the General Assembly from passing a proposed statute, or to compel it by mandamus to do so. And to the extent that a city council is clothed with legislative power under authority from the State, it is, in the exercise of that power, as free from control by the judiciary as the General Assembly.

3. ———: ———: ———: **Distinction.** A city council does not stand on an equality with the General Assembly, because the General Assembly, as a body, is the legislative department of the State government, and because it is that, it is free from the control of the courts. But a city council is not an essential part of the legislative department of the State; it possesses no inherent legislative power, and is not, in virtue of its own right, free from judicial control, but is so only when it is exercising legislative power conferred by law upon it, and then only in respect to the exercise of that power.

4. ———: ———: ———: ———: **Power Under Freeholders' Charter: City Government.** The power conferred on a city by section 16 of article 9 of the Constitution to adopt a charter for itself covers only charter provisions essential to a city government. Within that scope such a charter has the force of an act of the General Assembly; but if such a charter should essay to confer on the municipal assembly powers not essential to a city government, but appertaining to State authority, it would not in that respect have the force of a statute.

5. ———: ———: ———: ———: **Impeachment for Fraud.** An act of a city council, after its passage, even though strictly legislative in its character, may be assailed on the ground that it was obtained by fraud or corrupt influence.

6. ———: ———: ———: **Ministerial and Legislative Powers.** A city council has both ministerial and legislative powers. In the exercise of its legislative powers it is not subject to judicial control; but in the exercise of its administrative or ministerial powers, it is. And it cannot exempt or shield itself from judicial control, by covering or clothing a vulnerable ministerial act with the form used to inclose a legislative act.

7. ———: ———: ———: ———: **Ministerial Act: Gas Works: Fraud: Prohibition.** Where the petition in the equity case, seeking to enjoin a city council from entering into a certain contract with a gas company for the use of its streets, alleges that the rights which the city proposes to relinquish are in the nature of property rights, held in trust by the city council for the people, and that the council has no authority to dispose of them; that the extension of a franchise for a certain number of years is in violation of the charter; and that the whole scheme is the result of fraud, it, in each case, states a question which the circuit court is competent to decide, and, though the questions may be defectively stated, the Supreme Court will not, by prohibition, prevent the circuit court from considering the case.

## Prohibition.

WRIT DENIED.

*Gage, Ladd & Small, Rozzelle, Vineyard & Thacher, Scarritt, Griffith & Jones, Evans & Finley* and *W. C. Culbertson* for relators.

(1) The attempt of respondent to restrain or coerce the action of the common council upon the ordinances in question is a plain usurpation of the legislative functions of government, contrary to the provisions of the Constitution. A clear line of demarcation between the several departments of government has been drawn by numerous decisions of our Supreme Court, and any attempt of one to impinge upon another has been readily and severely denounced. Albright v. Fisher, 164 Mo. 56; State ex rel. v. Allen, 180 Mo. 31; State ex rel. v. Meier, 143 Mo. 439; Taylor v. Carondelet, 22 Mo. 105; St. Louis v. McCoy, 18 Mo. 238; McQuillin on Municipal Ordinances, p. 260, sec. 163. (2) The passage of these ordinances granting natural gas franchises is a legislative act. Albright v. Fisher, 164 Mo. 56; State ex

rel. v. Superior Court, 105 Wis. 651; Kittinger v. Traction Co., 160 N. Y. 377; Alpers v. San Francisco, 32 Fed. 503; Hayes v. Railroad, 111 U. S. 237; Gas Co. v. Des Moines, 44 Iowa 505; Waterworks v. New Orleans, 164 U. S. 481; Wright v. Nagle, 101 U. S. 791; Kadderly v. City of Portland, 74 Pac. 710; Conery v. Waterworks Co., 41 La. Ann. 901; State ex rel. v. Railroad, 140 Mo. 539; Gas Co. v. Gas Co., 115 U. S. 650.   (3)   There are no allegations of fraud in the petition that would confer jurisdiction on the circuit court.   Nagel v. Railroad, 167 Mo. 89; Barber Asph. Pav. Co. v. Field, 188 Mo. 182. (4)   Even if the allegations of fraud in the passage of these natural gas ordinances were sufficient to raise the issue, still they would be immaterial.   Fletcher v. Peck, 6 Cranch 128; Ex parte McCardle, 7 Wall. 514; United States v. Old Settlers, 148 U. S. 466; Soon Hing v. Crowley, 113 U. S. 710; United States v. Railroad, 142 U. S. 544; Angle v. Railroad, 151 U. S. 18; State ex rel. v. Hays, 49 Mo. 607; Brown v. Cape Girardeau, 90 Mo. 383; New Orleans v. Warner, 175 U. S. 145; Dreyfus v. Lonergan, 73 Mo. App. 345; Mayor v. Randolph, 4 Watts & S. 514; Kittinger v. Traction Co., 160 N. Y. 387.   (5)   The rule must be made absolute as to all defendants.   Railroad v. Mayor, 39 La. Ann. 127; Albright v. Fisher, 164 Mo. 66; State ex rel. v. Botts, 151 Mo. 362; New Orleans Waterworks Co. v. New Orleans, 164 U. S. 479.   (6)   Kansas City has full authority under its general power of control over the streets to grant a natural gas franchise and to insert therein any provisions germane to that purpose, including the surrender by the city of its option to buy existing manufactured gas plants, as reserved in the Payne & Snyder ordinances.   It is the settled law in this State that in order to grant a franchise for the use of the streets for a public purpose, for which the streets were dedicated, or acquired by condemnation or otherwise, such as the distribution of gas, or laying of a street rail-

way or subway of any kind for public use, it is not necessary that the city charter contain an express provision, authorizing the city to do so, but the provisions of the charter giving the city general control over its streets are sufficient to authorize such grant.    State ex rel. v. Corrigan, 85 Mo. 263; State ex rel. v. Murphy (Subway case), 134 Mo. 548; Julia Bldg. Assn. Case, 88 Mo. 258; Schopp v. St. Louis, 117 Mo. 136; St. Louis v. Tel. Co., 96 Mo. 629; Farrenbach v. Turner, 86 Mo. 416; Railroad v. Railroad, 31 Kan. 660. (7) The city has full power to release its option to purchase the property of the Kansas City, Missouri, Gas Co., as reserved in the Payne & Snyder ordinances.    This option is not property held in trust.

*Isaac B. Kimbrell, Frank Hagerman, Cowherd & Ingraham,* and *Reed, Yates, Mastin & Howell* for respondent.

(1)    The circuit court has jurisdiction of the subject-matter in controversy.  We maintain: (a) If the members of a city council, in managing the business affairs of a city, corruptly conspire with the seekers for a valuable contract, and for the actual payment to them of bribe money, are in the act of making such contract, a court of equity is not without jurisdiction and power to enjoin them from consummating the fraud and delivering to their co-conspirators a valuable property right of the municipality, even if the business transacted takes the form of a resolution or ordinance.  (b)  If a municipality holds valuable property rights for the benefit of its inhabitants, and the charter nowhere authorizes the members of the council as the agents of the city to sell or dispose of the same, and such councilmen are about to do so for the joint enrichment of themselves and the corrupt grantees, a court

of equity is not without jurisdiction to enjoin either
the councilmen or the grantees, although the act be ac-
complished by means of an ordinance or resolution. (c)
There being a large number of competitors desiring
to furnish natural gas, if these individuals enter into
a combination, conspiracy and pool to withdraw their
competition in favor of one special applicant, and the
members of the council have become partners in the
proposed trust, pool and conspiracy and are to be finan-
cially benefited thereby, and have by agreement ceased
to represent the city and become the corrupt represen-
tatives of themselves and their fellow conspirators, a
court of equity is not without power to enjoin the mem-
bers of such pool and conspiracy from consummating
its corrupt object. (d) The law has not inoculated
the members of a city council with any legal vaccine so
that they may practice corruption, barter away the
rights of the people, become secret grantees in a con-
tract they are making, flagrantly violate the duty of
the agent to the principal as well as the charter which
constitutes their power of attorney, and be immune
from restraint by a court of equity. A city and the peo-
ple of the city are as much entitled to the protection of
the courts in enforcing proper performance of duty by
its business agents as is an individual or a private cor-
poration. (e) Beyond question those who have cor-
ruptly conspired with the agents of a city may be re-
strained from consummating the fraud and taking to
themselves the fruit of their iniquitous practices. (2)
The council, in passing the McGowan ordinances, was
exercising its business, not its legislative functions. A
city possesses a dual capacity: one, business or proprie-
tary, the other, governmental or legislative. In pro-
viding for water, gas and other public utilities for it-
self and its inhabitants, it is exercising its business ca-
pacity. Because of this and for the further reason that

ordinances passed for such purpose do not rise to the dignity of enactments of the Legislature, courts of equity will inquire into the motives which enter into the passage of such ordinances and the making of such contracts.   Wolcott v. Lawrence Co., 26 Mo. 272; Crutchfield v. Warrensburg, 30 Mo. App. 402; Woolfolk v. Randolph Co., 83 Mo. 506; Book v. Earl, 87 Mo. 246; State ex rel. v. Clark Co., 41 Mo. 42; Schmidt v. Densmore, 42 Mo. 230; Saline Co. v. Wilson, 61 Mo. 237; Sturgeon v. Hampton, 88 Mo. 203; State ex rel. v. Harris, 96 Mo. 29; State ex rel. v. St. Louis, 145 Mo. 572; Steppen v. Fox, 56 Mo. App. 20; Donahoe v. Kansas City, 136 Mo. 665; Dillon, Mun. Corp. (4 Ed.), sec. 66; Whitfield v. Carrollton, 50 Mo. App. 98; Hannon v. St. Louis County, 62 Mo. 313; Barber Asph. Pav. Co. v. French, 158 Mo. 547; City of Valparaiso v. Gardner, 97 Ind. 1; City of Indianapolis v. Indianapolis, 66 Ind. 316; Dillon on Municipal Corporations (4 Ed.), 473-474; Crowder v. Sullivan, 128 Ind. 486; New Orleans Gas Light Co. v. City of New Orleans, 42 La. Ann. 188; Oliver v. Worcester, 102 Mass. 489; 21 Am. and Eng. Ency. Law, 951; McQuillin on Mun. Ord., sec. 163; Milhan v. Sharp, 15 Barb. 212; Negus v. Brooklyn, 52 How. Pr. 293; Colson v. Portland, Deady 481; People v. Canal Board, 55 N. Y. 390; Green v. Mumford, 5 R. I. 417; Walla Walla City v. Walla Walla Waterworks, 172 U. S. 8; Pike's Peak Co. v. Colorado Springs, 105 Fed. 11; Electric Co. v. City, 102 Fed. 663; State ex rel. v. Rodgers, 107 Ala. 456. (3) The officers of a municipality, as to the property of a city, are trustees in the management of such property, and their acts, if *ultra vires* or fraudulent, may be enjoined even if they be in the form of resolutions or ordinances.   Roberts v. Louisville, 92 Ky. 95; Davis v. Mayor, 1 Duer 451; People v. Sturtevant, 5 Seldon 263; People v. Dwyer, 90 N. Y. 402; Trading Stamp Co.

v. Memphis, 101 Tenn. 181; Lewis v. Waterworks, 19 Col. 236; Spring Valley Water Works v. Bartlett, 8 Sawyer 555; Milhau v. Sharp, 15 Barb. 194; Sherlock v. Village of Winnetka, 59 Ill. 398; Stevens v. St. Mary's Training School, 144 Ill. 336; Negus v. Brooklyn, 52 How. Pr. 293; Calson v. Portland, Deady 481; People v. Canal Board, 55 N. Y. 390; Railroad v. Smith, 29 Ohio St. 291; Davis v. Society, 75 N. Y. 369; 20 Am. and Eng. Ency. Law, 1231; 21 Ib. 951; Blaschko v. Mayor, 156 N. Y. 437; Electric Co. v. City of Wymore, 60 Neb. 199; McQuillin on Mun. Ord., secs. 163, 178; Spelling on Injunctions, sec. 18 (note), also sec. 712; Beach on Injunctions, secs. 1290, 1299, 1300; Dillon on Mun. Corp. (4 Ed.), secs. 94, 95, 908, 909, 910, 914, 915, 924; Tiedeman on Mun. Corp., sec. 394; State v. Saline County, 51 Mo. 350; Newmeyer v. Railroad, 52 Mo. 81; Matthis v. Cameron, 62 Mo. 504; Milhau v. Sharp, 15 Barb. 212. The transaction with McGowan relinquishes important property rights of the municipality and its inhabitants. Gas Co. v. Covington, 58 S. W. 805; Power v. Harlow, 57 Mich. 111; 19 Am. and Eng. Ency. Law (1 Ed.), pp. 285, 286; Solard v. United States, 4 Pet. 512; Delassus v. United States, 9 Pet. 177; Smith v. United States, 10 Pet. 326; Bryan v. Kennett, 113 U. S. 179; Carleton v. Carleton, 72 Me. 116; Ide v. Harwood, 30 Minn. 195; City v. Eddy, 123 Mo. 557; State ex rel. v. Tel. Co., 189 Mo. 83. And it has been held that property acquired for public purposes of this character, cannot be sold at all. Lake Co. Water & Light Co. v. Walsh, 160 Ind. 32; Summer Co. v. Wellington, 66 Kan. 590; Huron Water Works v. Huron, 7 S. Dak. 9. Or, that if salable at all, the law requires express charter power to authorize the council to convey it. Covington Gas Co. v. Covington, 58 S. W. 805. The right of purchase and to manufacture gas to the end of the franchise are property rights of a trust nature which

cannot be diverted. (a) If they are of a trust nature they cannot be diverted. Lake Co. Water & Light Co. v. Walsh, 160 Ind. 32. (b) The right of purchase was of a trust nature. Huron Water Works v. Huron, 7 S. Dak. 9; Covington Gas Co. v. Covington, 58 S. W. 805. (c) It requires express authority in the charter to do it. Covington Gas Co. v. Covington, supra. (d) The duty to give manufactured gas cannot be surrendered. St. Louis v. Gas Light Co., 70 Mo. 69; Thompson v. Railroad, 101 U. S. 71. An attempt to evade the inhibitions of the law by subterfuges and indirections is a fraud upon the law and will not be tolerated. The averments of the petition are that the McGowan franchises, contrary to the provisions of the charter, renew until 1935 these Payne & Snyder franchises, which do not expire until 1925. The averments of the petition govern, not the language of alleged copies of the ordinances. 26 Am. and Eng. Ency. Law (2 Ed.), 657; Magdalen College Case, 2 Coke 76; Alexander v. Relfe, 74 Mo. 519; Hill v. Swingley, 159 Mo. 50; Mayor v. Gill, 31 Md. 376; Hersey v. Board, etc., 37 Wis. 80; Railroad v. Board, 85 Fed. 320; Elkhart Co. Lodge v. Carey, 98 Ind. 242; Brown v. Bank, 137 Ind. 668. The council's powers cannot be delegated. This is especially true if, as contended by relators, they are legislative. St. Louis v. Howard, 119 Mo. 41; 1 Dillon on Mun. Corp. (4 Ed.), sec. 96; In re Quong, 14 Fed. 229; Cape Girardeau v. Riley, 72 Mo. 223. (4) General prohibition can only issue where there is an entire lack of jurisdiction over the subject-matter; limited prohibition where there is jurisdiction over the subject-matter, but the court has gone beyond its powers. If a judge has no jurisdiction of the subject-matter, prohibition will lie. According to some of the cases, if in any particular respect, he has no power to act, he may that far be restrained. So that, if Judge Gates has no power to decide the case present-

ed as to the aldermen, 'he still can proceed against Mc-
Gowan, Morgan, Small, The Kansas City, Missouri,
Gas Company, William Clough, city clerk, Gus Pear-
son, city comptroller, A. E. Holmes, city treasurer, and
Leo. H. Koehler, city auditor. Without first making
application to Judge Gates this action is premature.
State ex rel. v. Aloe, 152 Mo. 484; 23 Am. and Eng.
Ency. Law, 200; State ex rel. v. Smith, 104 Mo. 419;
State ex rel. v. Neville, 110 Mo. 345; Musick v. Rail-
road, 114 Mo. 309; Leonard v. Sparks, 117 Mo. 103;
Burke v. Kansas City, 118 Mo. 309; State ex rel. v.
Elkin, 130 Mo. 90.


VALLIANT, J.—The relators pray that a writ of
prohibition issue, addressed to the respondent, a judge
of the circuit court of Jackson county, to prohibit him
from entertaining jurisdiction of a cause pending in
that court.

The cause in question is a suit in equity instituted
in the name of the State of Missouri, on the informa-
tion and at the relation of the Prosecuting Attorney
of Jackson county, plaintiff, against Kansas City, and
certain individuals, named, as members of the Common
Council of that city, the City Clerk, City Comptroller,
City Treasurer, City Auditor, the Kansas City Mis-
souri Gas Company, a corporation, and four unofficial
individuals named as promoters of the project or
scheme therein assailed. The defendants in the suit in
equity are the relators in this proceeding. The state-
ments in the petition in the equity suit are substanti-
ally to the following effect:

In 1865 a corporation was organized under the laws
of this State to manufacture and furnish gas to Kansas
City and its inhabitants, and a contract was entered in-
to between that corporation and the city in which the
use of the streets was granted for that purpose, and

the corporation was to furnish gas to the people for $1.75 per 1000 cubic feet for a period of thirty years. In 1895 the life of that corporation expired by its own charter limitation. In January, 1895, a new gas corporation, called, in the brief, the Snyder Company, was organized, and entered into contract with the city to furnish gas to the people until 1925 at the price of one dollar per 1000 feet. In August, 1895, a similar corporation was organized, called, in the brief, the Payne Company, with which the city made a like contract for the same period. The Payne Company was practically the old 1865 company, and succeeded to its tangible property. The Snyder Company built its works and laid its pipes. The effect of the two companies competing for trade was that the price of gas was reduced to 50 cents per 1000 feet.

In 1897 the two companies, by agreement with the city, were allowed to consolidate and operate as one, under the name of the Kansas City Missouri Gas Company, which is one of the defendants in the equity suit. Immediately after the consolidation the price of gas went up to one dollar per 1000 feet.

Under the contracts of 1895 with the Snyder and Payne companies certain obligations were imposed on them and certain rights acquired by the city, among which were, first, the obligation of the companies, each, to furnish manufactured gas for the term of thirty years, that is, until 1925, for one dollar per 1000 feet; second, to sell their plants to the city at any time after 1907 at a valuation to be ascertained in a manner therein specified; third, to hold their franchises subject to the provisions of the city charter, among which was that they should not be renewed or extended before the last two years of their existence, that is, not before 1923. These obligations of the companies and rights of the city were continued in the contract with the consolidated company, wherein it was also stipulated that

the basis of the valuation of the property, when the city should elect to purchase it, should be the then actual value of the physical property "exclusive of the value of the stock, unexpired franchise, earning capacity," etc., or as construed by the counsel for the respondent, the value of old iron and material.

The consolidated company, the Kansas City Missouri Gas Company, was in the field operating under that contract and subject to those conditions in 1904 when natural gas in great quantities was discovered to exist in the vicinity of Kansas City.

After this discovery five different companies or associations were formed, each for the purpose of engaging in the business of furnishing natural gas to the inhabitants of Kansas City, and each made application to the Common Council for authority to construct works, lay pipes and mains in the streets, etc., for this purpose. Thereupon the Kansas City Missouri Gas Company, with the unofficial individual defendants above referred to, conspired with certain others, including members of the five proposed competing companies above mentioned, to shut off the threatened competition and obtain for themselves and their coconspirators a monopoly of the business, besides the annulment of the city's rights and the consolidated company's obligations above mentioned and that by the means presently mentioned, did on December 7, 1904, obtain the passage through the Common Council of an ordinance, numbered 27459, the nature of which will be presently mentioned. That ordinance was vetoed by the mayor on December 9, 1904. On April 27, 1904, an ordinance numbered 28549, identical in title and of similar purport, except in points of minor detail, was passed by the Common Council, and was, at the time of filing the original petition in the equity case, pending before the Mayor for his approval or veto. The Mayor has since vetoed that ordinance also, and the defend-

ants who are members of the council are now threatening to and will unless restrained pass it over the veto. Upon the filing of the petition in the equity suit, the respondent, the judge of the circuit court, issued a temporary restraining order enjoining the members of the Common Council and other city officers from passing, signing or giving effect to either of the proposed ordinances and enjoining the grantees from accepting the same. Thereupon the defendants in that suit filed their petition in this court for a writ of prohibition. It is unnecessary to set forth in full the first ordinance, No. 27459, or the second one, No. 28549, now pending before the Common Council on a proposition to pass it over the Mayor's veto. For the purpose of determining whether a writ of prohibition shall issue as prayed, it is sufficient to say of the contents of the last-named ordinance, as stated in substance in the petition in the equity suit, that it purposes to grant to the unofficial individuals named therein as defendants and their assigns the right to use the streets in which to lay pipes and erect necessary works to supply natural gas to the inhabitants of the city for a period of thirty years, authorizes them to acquire the property of The Kansas City Missouri Gas Company, and exercise the rights now possessed by that company, and when they shall have taken over the property and rights of the company they are relieved of the obligation to furnish manufactured gas (which the petition says is superior and safer than natural gas) on the terms and at the price in the existing contract required, yet extends the rights that the present gas company has under existing contract for a period of ten years beyond its present contract limit, contrary to the charter provision that it should not be extended or renewed until within two years of the expiration of its limit, and annuls the city's right to purchase the property on the advantageous terms mentioned. Counsel for relators in their brief

contend that the proposed ordinance does not relieve the grantees therein of the obligation to furnish manufactured gas at the stated price, and in support of their contention quote from the ordinance itself.  Counsel for respondent do not agree to that interpretation of the ordinance; which of the two interpretations is correct is a judicial question which the circuit court can decide.  It is not a vital question, however, in this prohibition proceeding, though it may have more significance in the equity suit (as to which we express no opinion), but however that fact may be, as the case now before us stands on demurrer to the return we look to the pleadings alone for the facts.

The petition alleges that the passage of this ordinance is the result of a conspiracy between the grantees therein named and the persons composing the five other companies above mentioned who were seeking similar grants, and the members of the Common Council, all of whom are named, in which it was agreed that those members of the council were to have shares of stock in the corporation to be formed, and that those members of the council agreed with the grantees named in the ordinance that in consideration of the shares of the stock to be given them or to others for them they would vote for the passage of the ordinance.  It is alleged in the petition that the prosecuting attorney can not state how much stock was to go to each member of the council named, but that the stock was to be divided for their benefit, and that was the price of their votes. It is averred as a legal proposition in the equity petition that the rights secured to the city under the contracts with the former companies and with the consolidated company are rights held by the city in trust for the people and that the city as trustee has no right to surrender them.

The foregoing is a very brief, perhaps it might be called a meager, statement of the facts of this case, but

for the purpose of considering the question of the jurisdiction of the circuit court in the premises, it is sufficient. This cause was argued and submitted to this court for its decision on a demurrer to the return of the circuit judge showing the above facts.

There are two main propositions on which the relators rely: first, that the Common Council constitutes the legislative department of the city government and in the exercise of its discretion in passing the ordinance in question is independent of the judiciary; second, the petition in the equity suit does not state facts sufficient to constitute a case of fraud and corruption on the part of the relators.

I. We will consider the second proposition first. The sufficiency of the petition in equity in this particular is not to be judged in this case by the same rules as governed in the case of Nagel v. Railroad, 167 Mo. 89, to which we are referred, because we are here viewing the petition from a different standpoint. The Nagel case was before us on appeal from the judgment of the circuit court sustaining a demurrer to the petition. The circuit court in the exercise of its jurisdiction had adjudged the petition insufficient and we sustained that judgment. If we should adopt the theory of the relators on this point in this case we would take the case from the trial court before it had passed on the question. In the Nagel case the petition was not sufficient, yet we recognized the jurisdiction of the circuit court over the case and affirmed its judgment. So here, if the statements of fact are not sufficient to constitute fraud, the trial court will so decide, and there will be time enough for us to express our opinion on that question when it comes before us on appeal. If the case stated, or attempted to be stated, in the petition, is of a subject over which the circuit court has no jurisdiction, yet the court gives indication of a purpose to entertain it,

an application for a writ of prohibition would be received, but if it be that the petition merely states defectively a cause of the nature of which the court has jurisdiction a writ of prohibition will not issue merely because it is feared that the court might erroneously decide that it was sufficient. We do not mean to imply from what is here said that the statements aiming to charge fraud in this petition are not sufficient or that they are of the same character as those in the Nagel case; we have no opinion on that subject, because the time for us to form an opinion has not arrived. In the case at bar the petition in equity states that the scheme is to form a corporation to take by assignment the rights proposed to be conferred on the individuals named, and that shares of the stock of that corporation are to be given to the members of the Common Council named, in consideration of which they have agreed to vote for the ordinance. If the case is not beyond the jurisdiction of the circuit court on the ground that the Common Council is a legislative body independent of the judiciary, then that court has jurisdiction to decide whether or not the allegations of the petition are sufficient to make out a case of fraud.

And it has jurisdiction to pass on other questions that are discussed in the briefs, for example, that the rights acquired by the city under the existing contracts are in the nature of property rights held by the city in trust for the people and not to be bartered away in the manner proposed, and other questions of like character to be decided according to the law, construing the city charter and the ordinance in question. All such are questions for the judgment of the circuit court in the first instance and not to be taken away from that court on the apprehension that they may not be decided correctly.

A writ of prohibition will not go on such a theory.

II.   The proposition, however, on which relators chiefly rely is that the Common Council is a legislative body and in passing an ordinance is independent of the judiciary.

This proposition rests for its foundation on article 3 of our State Constitution: ''The powers of the government shall be divided into three distinct departments—the legislative, executive and judicial—each of which shall be confined to a separate magistracy, and no person, or collection of persons, charged with the exercise of powers properly belonging to one of those departments, shall exercise any power properly belonging to either of the others, except in the instances in this Constitution expressly directed or permitted.''

It is not within the power of the judiciary, therefore, to enjoin the General Assembly from passing a proposed statute or compel it by mandamus to do so. And to the extent that the Common Council of Kansas City is clothed with a legislative power under authority of the State, it is, in the exercise of that power, as free from control by the judiciary as the General Assembly itself.   Yet an organization like the Common Council does not stand on an equality with the General Assembly even in this respect, because the General Assembly, as a body, is the legislative department of the State government, and because it is in itself and in its own right the legislative department of a State it is free from control.   But a common council is not an essential part of the legislative department of the State; it possesses no inherent legislative power and is not, in virtue of its own right, free from judicial control, but is so only when it is exercising legislative power conferred by law upon it and then only in respect of the exercise of that power.   Nor does an act of a common council, after its passage, even though it be strictly legislative in its character, stand on exactly the same plane as an act of the General Assembly, for that whereas the valid-

ity of an act of the General Assembly cannot be impeached in a court on the ground that its passage was obtained by fraud or corrupt influence, yet an ordinance may be so assailed. [Knapp, Stout & Co. v. St. Louis, 156 Mo. 353; Barber Asphalt Co. v. French, 158 Mo. 534, l. c. 547.]

A common council or board of aldermen may have, and indeed such bodies usually do have, both ministerial or administrative powers and governmental or legislative powers. They are mere agencies of the State government exercising delegated powers. In the exercise of their legislative powers they are not subject to judicial control, but in the exercise of their ministerial or administrative powers they have no such exemption. And even though when acting in either capacity they speak in the form of an ordinance, yet if what they say is not the promulgating or the making of a law, they are not exercising legislative powers. If, for example, the city owns a certain lot of land which the common council has authority to sell, and the common council, pursuant to an agreement with a purchaser, should pass an ordinance directing the mayor, upon payment of a certain sum of money, to execute a deed conveying the lot to the purchaser, would any one say that in the passage of the ordinance the council was exercising legislative power? The law in such case regards the substance of the act, not the form of its execution. A municipal assembly, a common council, board of aldermen or body of that kind, by whatsoever name it may be called, derives its powers from the city charter, and, ordinarily, the charter is the grant of the State Legislature and has the force and effect of a statute. Under our State Constitution of 1875, a city having a population of 100,000 or more may frame a charter for itself subject to the Constitution and laws of the State. [Sec. 16, art. 9, Const.] The effect of that provision of the Constitution is to transfer from the Gen-

eral Assembly to ·the inhabitants of such city, if they elect to exercise it, the legislative power to frame a charter, the charter when adopted to have the same force and effect as it would have had if, in the absence of that Constitutional provision, it had been granted by the General Assembly. The power conferred on a city by that clause of the Constitution covers, however, only the making of a charter for city government; it does not take from the State Legislature, or confer on the city, the power to make laws other than those appertaining to a city government. Therefore, though a charter framed by the freeholders and adopted by the people should essay to confer on the common council powers not of essence of city government, but appertaining to State authority, it would not in that respect have the force of a statute. But within the legitimate scope of the power conferred by the Constitution, the freeholders' charter, when adopted by the inhabitants of the city in the manner prescribed, has the full force and effect of a statute.

It is essential to a well-organized city government that it should have both ministerial or administrative powers and legislative powers. These are usually confided to a mayor and board of aldermen or common council, as it is called in the charter of Kansas City, and their acts, both ministerial and legislative, are usually effected through the form of ordinances. If the city has a piece of property which it desires to sell, an ordinance is passed directing the mayor or some other officer to execute a deed; if a contract for the building of a fire-engine house is to be entered into, an ordinance is passed authorizing the proper officer to sign the contract; if regulations are to be made governing the running of street cars or other vehicles on the streets or for the preservation of the health or safety of the people, an ordinance is passed. Thus, the ordinance is the form of official utterance, whether the act be ministerial

or legislative. The form in which the act is expressed is immaterial; the act done denotes its own character. A common council cannot shield a vulnerable ministerial act by covering it with the form used to inclose a legislative act.

In State ex rel. Subway Co. v. St. Louis, 145 Mo. 551, opinion by BURGESS, J., the difference in the natures of these powers exercised by the municipal assembly, and their liability to control in the one class and freedom from control in the other, are pointed out, and quoting with approval from Ill. Trust & Sav. Bank v. City, 76 Fed. 282, it was said: "In contracting for waterworks to supply itself and its inhabitants with water, the city is not exercising its governmental or legislative powers, but its business or proprietary powers. The purpose of such a contract is not to govern its inhabitants, but to obtain a private benefit for the city itself and its denizens."

And in Donahoe v. Kansas City, 136 Mo. l. c. 665, this court quoted with approval from McKenna v. St. Louis, 6 Mo. App. 320, wherein it is said: "Municipal corporations are considered by law in two aspects. In one, their functions are chiefly ministerial and relate to corporate interests only. These include the making and improving of streets, the construction of sewers and other improvements and keeping them in repair, the holding of property for corporate purposes, etc. But as to these matters of strictly corporate interest there are often duties to be performed of a legislative or judicial character. In the other aspect, the corporation is regarded as holding a *quasi* delegated sovereignty for the preservation of the public peace and safety and the prevention of crime. This includes the maintenance of a police force, the appointment of officers charged with the public health, the establishing of regulations for the suppression of vice, and other matters of public concern in which all people have a com-

mon interest which it is the chief end of every good government to protect."

These distinctions have been pointed out in later decisions by this court (Ely v. St. Louis, 181 Mo. 723; Ruppenthal v. St. Louis, 190 Mo. 213); and are well observed in other jurisdictions. [Valparaiso v. Gardner, 97 Ind. 1; New Orleans Gas Lt. Co. v. New Orleans, 42 La. Ann. 188; Oliver v. Worcester, 102 Mass. 489; Spring Valley Water Works v. Bartlett, 8 Sawyer 555, and other cases cited in the brief for respondent.]

In Albright v. Fisher, 164 Mo. 56, which is relied on by relators, this court by its writ prohibited a circuit judge in St. Louis from enjoining members of the Municipal Assembly from passing an ordinance authorizing a street railroad company to extend its tracks through a certain street. That case was analogous to this in one important fact, that is, the ordinance sought to be enjoined was one conferring authority on a public utility corporation to use a street of the city. But in that case the right of the Municipal Assembly to grant the authority was challenged only on the ground that the requirements of an act of the General Assembly, of June 19, 1899, had not been complied with, in this, that the consent of the abutting property-owners along the street had not been obtained. As the case was presented to this court, it was seemingly conceded that the passage of the ordinance was a legislative act, but it was contended that the constitutional provision that exempted the State Legislature from control of the judiciary did not apply to a Municipal Assembly. The main point in the opinion was expressed in these words (l. c. 64): "Taking this established doctrine of this court as a basis and a premise, it must needs follow that when the Municipal Assembly of the city of St. Louis is engaged in the performance of its legislative functions, it is quite beyond the power of the courts to interfere with the exercise of those functions *in any manner*

*whatever.''* That was the law point on which the case turned and to that proposition we adhere. The contents of the ordinance in that case were not before the court further than they might be inferred from the title; the question of whether the ordinance was in effect a contract or a legislative act was not presented to the court for consideration and was not decided.

But in the case at bar the nature of the ordinance, the passage of which the circuit court is asked to enjoin, is shown to be merely that of a contract, by which the Common Council, in its ministerial or administrative capacity, is proposing to grant to certain individuals the use of its streets for certain purposes and relinquish certain rights that the city has under its former contracts. There is no legislative character about it. The mere fact that it takes the form of an ordinance does not change its character. If instead of stating, as the petition in the equity case does, that the members of the Common Council were about to pass an ordinance to the effect stated, it had stated that they were about to enter into a contract to that effect, it would have been as good, perhaps better, pleading, because it is the ultimate fact and not the evidence of the fact that should be pleaded. Now suppose the petition had stated the fact in that form, what would be thought of the answer if it should say, true it is we are about to enter into that kind of a contract and we are going to do it for the price named, but we are going to do it in the form of an ordinance and therefore we are beyond the reach of the court? Yet that is in effect just what the relators say by their demurrer to the return. If the case were pleaded in that form it would unmistakably exemplify the difference between a ministerial and a legislative act.

The petition in the equity suit says that those rights of the city which it is proposed to relinquish are very valuable and are in the nature of property rights

held by the Common Council in trust for the people and that the council has no authority to dispose of them; whether that is so or not, is a question which the circuit court is competent to decide. It also says that the extending of the rights of the present gas company at this time for a period of ten years is in violation of the charter on that point; whether or not that is so is also a question for the circuit court. It also says, or attempts to say, that the whole scheme is the result of fraud; whether this is so or not, and whether as a matter of pleading the fraud is sufficiently stated in the petition, is also a question within the province of the circuit court to decide. We see no reason for interfering with the court in the due consideration of the case.

Writ denied.

All concur, except *Marshall, J.*, who dissents on the ground that in his opinion this decision is in conflict with that in Albright v. Fisher and that in respect of the ordinance in question the Common Council is acting in its legislative or governmental capacity.