Sweeney *v.* Vaughn.

SWEENEY  *v.*  VAUGHN.

(*Nashville.*    March  6,  1895.)

1. SALES.   *Waiver of terms.*

The condition that the purchaser's note to be given at a public
sale shall bear interest from date is waived, and title vests in
the purchaser, where the seller furnished the form of note to
be given, omitting interest, and made no objection on account
of the omission, when the note was returned properly executed
in other respects in compliance with terms of sale.

2. SAME.   *Requirement of approved security.*

The condition in the terms of a public sale that the purchaser
shall give note "with two approved securities" is complied
with, and title vests in the purchaser, when he tenders note
duly executed, signed by two good and solvent sureties, which
is justly entitled to approval.   The seller cannot arbitrarily
reject such note.

Cases cited: 2 Campbell, 530; 9 N. E. Rep., 101; 4 S. & R. (Pa.), 1.

3. BURDEN OF PROOF.    *Upon purchaser to show solvency of sureties.*

The *onus* is upon the purchaser, in such case, to prove that the
note tendered was such as the vendor ought to have approved
and received.

Case cited: 20 Wend. (N. Y.), 431.

FROM   WILLIAMSON.

Appeal in error from Circuit Court of Williamson
County.    W. L. GRIGSBY, J.

S. S. House for Plaintiff.

Thomas & House for Defendant.

Snodgrass, Ch. J. Vaughn was the purchaser of a horse at a public sale made by Sweeney in pursuance to an advertisement of sale of this and other personal property. The terms of the sale, as set forth in the advertisement, were: "All sums under ten dollars, cash; over this amount, a credit of twelve months will be given. Notes, with two approved securities, bearing interest from date," required of purchasers.

The sale was made on January 6, 1894. The horse in controversy was bought by Vaughn at the price of seventy-two dollars, an amount which required the giving of a note. Vaughn was not then prepared to execute note, but told Sweeney he would have to go to Franklin to get sureties. To this Sweeney assented, no time being specified when the note should be presented. Sweeney gave Vaughn the following note in blank to be signed: "By the twenty-fifth of December next, we, or either of us, promise to pay J. J. Sweeney seventy-two dollars, for value received of him. January 6, 1894." To this note Vaughn, after signing himself, procured the signatures of two men proven to be good and solvent, and presented it to Sweeney on the fourteenth of January. Sweeney declined to take it, saying he had decided not to let Vaughn have the horse. Thereupon, Vaughn sued out a writ of

replevin before a Justice. He obtained judgment, and defendant appealed. Tried by the Circuit Judge on this appeal, judgment was again rendered in his favor. Defendant Sweeney appealed to this Court, and assigned errors.

Several errors are assigned, only two of which need be noticed: First, that the note itself did not bear interest, in accordance with the terms of the sale. But Sweeney gave the note just as it is to Vaughn to be signed, and must be held to have waived such condition. And it appears in evidence that he did not except to the note, when presented, on this ground, and so this is not now material. Second, the notes to be taken were not "approved" in the sense of the contract, Sweeney insisting that this term meant to reserve to him the right to approve or disapprove the notes offered, however good or bad. This is not the sense in which this word, in its connection here, must be understood and construed.

There is no difficulty in a vendor contracting to sell property only on such security as he shall personally approve, if such contract is so specific as to fix the right, but a sale made on terms of acceptance of "approved" security or surety, without more, is properly held to mean good and solvent security which ought to be approved, which the vendee can show to be good and meriting approval. One of the definitions of "approve" given by Mr. Webster is, "To make or show to be worthy of

Sweeney *v.* Vaughn.

approbation or acceptance." This is the proper meaning of the word as used in this contract. *Hodgson* v. *Davis*, 2 Campbell, 530; *Andis* v. *Personett*, 9 N. E. Rep., 101; *Gnier & Diehl* v. *Page*, 4 S. & R. (Pa.), 1.

In a controversy arising under such a contract, the *onus* is on the vendee to show that the note offered was such a note as the vendor ought to have approved and received. 20 Wend. (N. Y.), 431. This he has done in this case by evidence not controverted.

The judgment must be affirmed.