BETTER BUILT HOMES & MORTGAGE COMPANY, a Corporation, Relator, v. JULIUS R. NOLTE, Mayor of the City of Clayton, et al., Respondents.

St. Louis Court of Appeals. Opinion Filed March 6, 1923.

1. **MANDAMUS: Municipal Corporations: Plats: Board of Aldermen: Approval of Legal Plat: Ministerial Act: "Approve."** Where a platter of a subdivision to a city, conformed to all the requirements of section 9283, Revised Statutes 1919, and presented such plat to the common council of the city for approval, as a condition precedent to the acknowledgment and recording of the map under section 9284, such approval was a ministerial duty, the performance of which may be compelled by mandamus, it being mandatory upon the council to approve a plat when the statutory requirements are fulfilled by the plat, and the council is powerless to declare other limitations or restrictions than those set out in the statute; the word "approve" not necessarily indicating that a discretion is contemplated.

2. **MUNICIPAL CORPORATIONS: Plats: Statute Relating to Plats: Depth and Width of Lots not Regulated.** Where a platter of a subdivision to a city has complied with section 9283, Revised Statutes 1919, with reference to the laying out of streets therein, he has met the only requirements of the law imposed upon him in that regard; the width and depth of lots platted not being regulated.

3. **MANDAMUS: Alternative Writ: Directed Against Board of Alder-
men: Mayor Included as Presiding Officer.** In view of the fact
that the Board of Aldermen of a city can only act, under ordinary
circumstances, in conjunction with the mayor, who is the presid-
ing officer of same, where an alternative writ was directed against
the whole body of the Board of Aldermen including the mayor as
the head and presiding officer of such body, to enforce the council's
approval of a plat as a subdivision of a city, the writ was rightly
directed under the facts and circumstances attendant, although
the mayor had at no time been guilty of any omission, refusal or
failure of duty in reference to the ordinance referred to in the
writ.

MANDAMUS ORIGINAL PROCEEDING.

PEREMPTORY WRIT AWARDED.

*Leahy, Saunders & Walther* for relator.

*Smith & Pearcy* and *Clarence L. Wolf,* for respond-
ents.

DAUES, J.—This is an original proceeding in man-
damus issuing out of this court agaist the respond-
ents as Mayor and members of the Board of Aldermen
of the city of Clayton, St. Louis County, Missouri, where-
by it is sought to require respondents in their official
capacity to approve a plat of a certain tract of land as
a sub-division of said city.

Relator's petition, which was afterwards incorpo-
rated into and made a part of our alternative writ, states,
in substance, that the relator is a corporation engaged
in the business of owning, subdividing and selling land;
that it is the owner and proprietor of a tract of land in
the city of Clayton, St. Louis county, Missouri; that this
land is bounded on the east by the western boundary
line of the city of St. Louis; on the west by the right
of way of a street railway company; on the south by
a sub-division known as Hi-Pointe, and on the north by
a line 190 feet from a sub-division known as Hillcrest.
It is then alleged that Clayton is a city of the fourth
class, and that Julius R. Nolte is the Mayor, and that
respondents Louis E. Dennig, John E. Eggers, Fred J.

Hollocher, John Grueninger, John Lyons, Henry Rice, Christ Ruehl, W. Scott Smith, Jules E. Strong and George Roth constitute the Board of Aldermen of said city; that by chapter 85, Revised Statutes 1919, it is provided that whenever any addition to any city shall be laid out, the proprietor of such addition shall cause a plat thereof to be made, describing the ground within such addition reserved for public purposes and shall describe the lots for sale by number and by their length and width, and that the streets as laid out shall conform to the streets of such city so that the streets and avenues on the plat shall, as near as may be, run parallel with or be continuations on a straight line of the streets of such city, and that all taxes against the property to be platted shall be paid; that by said law it is further provided that the plat shall be acknowledged and recorded in the office of the Recorder of Deeds, but not until the same has been submitted to and approved by the common council of such city, town or village by ordinance, duly passed and approved by the Mayor, which approval shall be endorsed upon the plat. It is then alleged that relator caused an accurate plat of said parcel of ground to be made, as shown by an accompanying exhibit. It is then alleged that the plat particularly sets forth and describes all the ground within such addition set apart for private streets, avenues, etc., there being no public streets laid out, and sets out and describes all lots for sale by their numbers and their precise length and width, and alleges that such platted streets conform to the streets of the city of Clayton so that the streets and avenues of said addition, as near as may be, run parallel with the streets of said city; that there are no streets in the said city of Clayton east of said tract, the eastern boundary of said tract being the western limits of the city of St. Louis, and that there are no streets running east and west in the city of Clayton west of relator's tract of land; that immediately west of said platted ground there is an undivided tract of land containing 70 acres

of land, and that the east and west streets in relator's sub-division therefore could not be made prolongations of any existing streets. It is alleged that all the taxes against such property so platted have been paid.

It is then alleged that on the 12th day of December, 1922, relator submitted said plat to said Board of Aldermen for approval, and submitted a form of the ordinance ordaining the approval of said plat, and that said Board arbitrarily and without any valid objection to said plat refused to approve same. The vote to approve said ordinance was in the affirmative by Respondents Grueninger, Lyons, Ruehl and Roth. Respondent Dennig being absent, the remaining members of the Board voted in the negative there being no tie vote, respondent Mayor Nolte was not called upon to vote thereon. It is stated that the plat complied in all respects with the terms of said statute relating to the platting of subdivisions, and that the approval of said plat by said Mayor and Board of Aldermen is merely a ministerial duty which by said statute they are required to perform. Grantees of the sold lots and certain mortgages were joined as relators before submission of the case. This, however, does not become noteworthy.

Respondent Mayor Nolte filed his separate return in the nature of a motion to quash. Respondents Grueninger, Lyons, Ruehl and Roth together filed a separate return which is in effect a confession of the petition of relator and the alternative writ of mandamus, and such return contains no plea in avoidance of such confession. To like effect is the separate return of F. J. Hollocher. Respondent Dennig and the members of the Board (except Hollocher) voting to reject such plat, filed a separate return. Much of this last return was stricken out on motion of the relator. We set out so much of same as remains, which gives rise to the questions which we must here determine. Same is as follows:

"These respondents deny that the approval of the said plat marked 'Exhibit A' was or is a mere ministerial

duty, but respondents state that in truth and in fact under the provisions of the Revised Statutes of Missouri they are, as members of the Board of Aldermen of the City of Clayton, clothed with the duty to pass upon and with due deliberation to exercise an unbiased judgment on the merits of plats of proposed additions submitted to them for approval, and to consider whether or not such plats under the provisions of the Revised Statutes of Missouri and the ordinances of the City of Clayton should be approved.''

Relator has filed a motion for judgment on the pleadings, so that we have purely questions of law before us.

Section 9283, Revised Statutes 1919 (Chap. 85), relating to plats of cities, etc., is as follows:

''Whenever any city, town or village, or any addition to any city, town or village, shall be laid out, the proprietor of such city, town or village, or addition, shall cause to be made out an accurate map or plat thereof, particularly setting forth and describing: First, all parcels of ground within such town, village or addition reserved for public purposes by their boundaries, course and extent, whether they be intended for avenues, streets, lanes, alleys, commons, or other public uses; and, second, all lots for sale by numbers, and their precise length and width. And the streets of all such additions to cities, towns and villages, or of plats of ground, except plats for cemetery purposes, shall conform to the streets of such city, town or village, so that the streets and avenues of such additions or plats shall, as near as may be, run parallel with or be continuations on a straight line of the streets of said city, town or village, and all taxes against the property proposed to be platted shall be paid.''

Section 9284, Revised Statutes 1919, provides that such map shall be acknowledged and recorded, but not until ''the same has been submitted to and approved by the common council of such city, town or village by ordinance duly passed and approved by the Mayor, and such

approval thereof endorsed upon said plat, under the hand of the clerk and seal of said city, town or village, nor until all taxes against the same have been paid."

Stripped to the barebone, we have this single question: Where the platter has done *all* that the statute demands, does the approval of such plat by the city council become a mere ministerial duty, the performance of which may be compelled by mandamus?

It appears that the proposed sub-division contains no public streets, but is laid out with private streets upon which lots are made to face. Such streets on the plat conform to the streets of the city of Clayton, in this that such proposed streets and avenues, as near as may be, run parallel with the streets of said city: these streets run east and west, and streets in so much of the city of Clayton lying north and south of said tract of land also run east and west. There are no streets of the city of Clayton east of this tract of land, as same borders on the city of St. Louis to the east. Immediately west of said tract there are no streets running east and west in the city of Clayton, and, indeed, it appears that immediately west of said tract there is an undivided tract containing 70 acres or more of land, so there is no question here of a continuation or prolongation of the proposed streets into existing streets of the city, there being no streets either east or west of said tract with which any proposed street could be made to articulate. The streets of the city of Clayton north and south of said tract are paralleled by the proposed streets of the tract. The taxes on said property plat have been paid.

We are forced to conclude that the Board of Aldermen is powerless to declare other and further limitations or restrictions than those set out in the statute.

It is to be observed that the statute provides that the streets and avenues as set out on the plat shall, as near as may be, run parallel with *or* be continuations on a straight line of the streets of the city. There can be no question that the plat conforms to this requirement.

of the statute. Obviously we cannot consider the streets of the city of St. Louis which lie immediately east of the tract, and there are no streets in the city of Clayton immediately west of this tract. Such portion of the city lying west is an unplatted 70-acre tract of land, and hence the proposed streets could not be made to articulate with any streets on that side. The streets in the tract as laid out in the plat admittedly run parallel with the streets of Clayton north and south of said tract.

This identical question has been before the Kansas City Court of Appeals in the case of State ex rel. Strother v. Chase, 43 Mo. App. 343. Relator there sought to compel the council of the city of Marshall, Mo., to approve a plat of a sub-division in which streets and alleys were laid out. It was demanded by the city council that the relator should extend an alley marked on the plat, and refused to approve same without such extension. The Court of Appeals held that such requirement was clearly outside of the authority and power of the council because no such requirement was to be found in the statute. That case points out that it is mandatory upon the council to approve a plat when the statutory requirements are fulfilled by the platter, and that the council is powerless to declare other limitations or restrictions than those set out in the statute.

That case has come to the attention of our Supreme Court in Downend v. Kansas City, 156 Mo. 60, 1. c. 67, 56 S. W. 902, and in referring approvingly to same, Judge MARSHALL said:

"In State ex rel. Strother v. Chase, 42 Mo. App. 343, the Kansas City Court of Appeals held that when an owner presented a plat to the common council for approval which conformed to the requirements of the act of 1887, the common council had only a ministerial duty to perform and was bound to approve it, and could be compelled by mandamus to approve it, and that the common council had no power to add additional conditions, qualifications or restrictions. nor could it dictate the

length or width of a street or alley, since the legislature had not seen fit to require such conditions. The court construed the act of 1887 strictly, and held that the statute only required the proposed platted streets to 'conform to the streets of such city, town or village, so that the streets and avenues of such additions or plats shall, as near as may be, run parallel, or be continuations on a straight line of the streets of said city, town or village, and all taxes against the property proposed to be platted shall be paid.' Accordingly in that case the common council was compelled by mandamus to approve the plat.''

We note the distinction contended for by learned counsel for respondents, to the effect that the Strother case must be considered as authority only in "alley" cases. We think no such interpretation can be given that case. It is squarely held in that case that the council may not add other restrictions or requirements to a plat beyond those set out in the statute. Counsel for respondents also argue that from the very language of the statute itself it appears that the duty of the Board of Aldermen is not ministerial but involves the exercise of a discretion; that the word "approve" is used, and therefore it necessarily follows that a discretion is involved. The word "approve" does not necessarily indicate that a discretion is contemplated. The word must be considered in connection with the subject matter to which it is applied, and the connection in which same is found. [See: Albert v. Order of Chosen Friends, 34 Fed. 721; Kingfisher B. of E. v. Kingfisher, 5 Okla. 82; Sweeney v. Vaughn, 94 Tenn. 534, 29 S. W. 903.]

We note the further argument that because the approval of the plat is by statute committed to the common council, which is a deliberate body, that therefore a discretion was contemplated, for, it is argued, had no discretion been intended such approval would have been left to a mere administrative officer, such as a city engineer. We should not lose sight of the fact that the

councils of American municipalities sometimes perform purely administrative functions. This has been pointed out by this court as early as the case of McKenna v. City of St. Louis, 6 Mo. App. 320. [See also: State ex rel. v. Gates, 190 Mo. 540, 89 S. W. 881.]

It is engagingly argued that inasmuch as the width and depth of the lots is necessarily regulated by the location, width and direction of streets, that therefore the statute contemplates a supervision of the depth and width of lots. To this we answer, that when a platter has complied with the statute with reference to the laying out of streets therein, he has met the only requirements of the law imposed upon him in that regard. The statute has not concerned itself about lot sizes, it has made requirements as to the manner of laying out streets and with this requirement relator has strictly complied.

We fully appreciate the advanced idea now being adopted throughout American cities in enacting what are commonly known as "Zoning Ordinances". However, those are questions with which the municipalities must deal through ordinances, but we are not dealing with any such question here. We are facing the single question as to whether or not the Missouri statute has been complied with by relator with reference to platting this sub-division, independent of any ordinances of the city of Clayton, and we find no escape from the conclusion that the platter having complied with every requirement of the statute, it becomes the duty of the respondents to approve said plat.

We have taken with the case the motion of Respondent Mayor Nolte to quash the alternative writ in so far as same relates to said respondent. In this motion the Mayor takes the position that the writ shows upon its face that he has at no time been guilty of any omission, refusal or failure of duty in reference to the ordinance referred to in the writ; that he as Mayor has as yet had no opportunity to exercise the powers of his office in reference to voting upon or approving said ordi-

nance. It is true this respondent, so far as it appears, has had no opportunity to vote for or against the ordinance, nor to approve or disapprove any such ordinance. However, our writ was directed against the whole body of the Board of Aldermen, including the Mayor as the head and presiding officer of such body. That body can only act under ordinary circumstances in conjunction with the Mayor, who is the presiding officer of same, and we think under the facts and circumstances attendant that this writ should go against the whole of said Board of ·Aldermen, including the Mayor. Therefore said respondent's· motion to quash is overruled.

,From what has been said, it follows that our peremptory writ should go, and it is so ordered.

*Allen, P. J.,* and *Becker, J.,* concur.