COMMISSIONERS' COURT et al. v. FRANK JESTER DEVELOPMENT CO.

No. 13758.

Court of Civil Appeals of Texas. Dallas.

Jan. 17, 1947.

Rehearing Denied Feb. 21, 1947.

Robert Ogden, of Dallas, for appellants.

Lively, Dougherty & Alexander and Chaney & Davenport, all of Dallas, for appellee.

YOUNG, Justice.

This suit was initiated by Frank G. Jester Development Company against the County Judge, County Clerk and Commissioners' Court of Dallas County, seeking a mandamus compelling the Commissioners' Court to approve for filing, a plat subdividing certain lands in Dallas County, in which plat roads and streets were laid out, the boundaries fixed and a dedication thereof made. Plea to jurisdiction of the District Court, interposed by respondents, was overruled; and trial on the merits to the court resulted in judgment in favor of relator, i.e., mandatorily requiring respondents to file such plat in accordance with Art. 6626, Vernon's Ann.Civ.St.

The Article (6626, R.S. 1925), Title "Registration" and previous revisions, had enumerated the instruments of writing in this State that "are authorized to be recorded"; the 42nd Leg., Acts 1931, amending same as follows: "provided, however, that in cases of subdivision or re-subdivision of real property no map or plat of any such subdivision or re-subdivision shall be filed or recorded unless and until the same has been authorized by the Commissioners' Court of the county in which the real estate is situated by order duly entered in the minutes of said Court, except in cases of partition or other subdivision through a court of record; provided, that within incorporated cities and towns the governing body thereof in lieu of the Commissioners' Court shall perform the duties hereinabove imposed upon the Commissioners' Court."

In Trawalter v. Schaefer, 1944, 142 Tex. 521, 179 S.W.2d 765, 767, the Supreme Court construed Art. 6626 as amended, viz: "To our mind the above-quoted statement of the provisions of the emergency clause to this Act, considered with the provisions of the body of the Act, shows that the Legislature intended that maps and plats of land shall receive authority from commissioners courts to be recorded, if they establish and show the connection of such land with the original survey of which it is a part, and contain sufficient data to locate the land contained therein, and, further, place the land shown by the map or plat in such a condition as makes it practical to tax the same according thereto. Of course, this would require the map or plat to contain sufficient data to enable the taxing authorities to correctly carry the land on the tax rolls and avoid duplicate or double renditions of the same land."

Having reference to the above statute and opinion of the Supreme Court thereon, appellant court took action as follows: "At a regular meeting of the Commissioners' Court of Dallas County, Texas, held on Monday, April 16, 1945, on motion of Buck Frank, Commissioner of District No. 2, and seconded by Lynn V. Lawther, Commissioner of District No. 1, the following order was unanimously adopted: Whereas, due to recent ruling (——— case, decided by the S.C. April 5, 1944, over a year past) of the higher Court of the State, the duty and/or burden of approving Additions to the City of Dallas and/or other cities of Dallas County outside the corporate limits of said cities, has fallen and/or been placed on the Commissioners' Court; and Whereas, it is the desire and duty of this Court to secure as uniform, co-ordinated and well-planned Additions as possible in order that the growth of the City of Dallas and other cities in Dallas County shall not be delayed or hindered; and Whereas, in the opinion of this Court certain standards should be followed by all developers of Additions in order to promote the proper growth of the City of Dallas and other towns of the County and prevent the growth of slums adjacent to the cities within Dallas County; It Is, Therefore, Ordered, Adjudged and Decreed by the Commissioners' Court of Dallas County, Texas, that any person de-

siring this Court's approval for the filing of an Addition shall first present a preliminary sketch to the County Engineering Department so that this department may check the location and lay-out of said Addition. After the County Engineering Department has checked and approved the layout, widths of streets, drainage, etc., the person or persons filing the application shall enter into the Court Order for its final approval, an agreement by which the developer or developers of the Addition shall do the grading, drainage structures and gravel, and in some cases, pave the streets that are being dedicated within the Addition. The grading, drainage structures and gravel shall be done according to the specifications on file in the County Engineering Department; however, the following minimum specifications shall be used: Proper grading; drainage structures as recommended by the Engineering Department as to size, location and materials, and a minimum of six (6) inches of gravel, compacted, twenty feet wide. It is further ordered that the act of this Court of Approving the Addition does not in any way obligate Dallas County to perform any work within the Addition. It is further ordered that in the development of Additions the developer must provide entrance culverts to each separate piece of property. It is further ordered by this Court that any through streets or roads shall have a right of way width of not less than sixty (60) feet, and all intermediate streets or roads not less than 50-feet of right of way, and no Addition shall have a "dead end" street. Done In Open Court, all members present and voting. (Signed) Al Templeton, County Judge."

In October 1945, appellee land company, pursuant to terms of Art. 6626, presented to said Commissioners' Court an application for authority to file in the office of the County Clerk a map or plat of a rural addition known as "Beckley Acres," on which were depicted 13 lots of defined size and area, intersected by proposed streets, Lotus Lane and Idlewild Lane. Attached to the plat was a dedication with detailed restrictions and field notes setting forth outer boundaries of the Addition, showing it as adjacent to Beckley Road (U. S. Highway 77), Dallas County, and more particularly described as "Beginning at the intersection of the East line of Beckley Road and the North line of the South ½ of the Marandy Parks Survey, Abstract No. 1120, said point being N 89° 30', 60.0 feet from the Northwest corner of said South ½ of the Marandy Parks Survey; * * *"; and containing some 30 acres of land. Aforesaid plat and named Exhibits were at once referred by the Court to its County Engineer, from whom Mr. Jester, President of appellee company, received the following reply of date November 7: "Gentlemen: Your application to the Commissioners' Court for the approval of Beckley Acres as submitted to the County Engineer cannot be approved by the Engineering Department because of the location of Lotus Lane and your not agreeing to fulfill the rules and regulations adopted by the Commissioners' Court for such an addition. That is, Lotus Lane intersects Beckley Road, which is U. S. Highway 77, at a point that creates a traffic hazard, and you do not agree to gravel the dedicated · streets. Yours truly, (s) R. H. Clinger, County Engineer."

While respondent Court made no formal order concerning the plat and dedication, its consideration thereof was obviously conditioned upon a report of the county engineer, according to testimony of Commissioner Frank; hence above letter of Mr. Clinger must be taken as a refusal on behalf of the Court to authorize a filing of the instruments in the office of County Clerk.

We must first observe that all parties appear to be laboring under a misconception as to the purview of this Article (6626). Relator in its written application sought "approval" of the plat and dedication by said Commissioners' Court and the County Engineer, "same to be filed by the petitioner if approved * * *"; and respondent seizes upon the word "approval" as an effort by the landowner to secure an acceptance of the plat and described roads, with resultant responsibility upon the county for their upkeep; pointing out that under the Constitution and general law, the matter of opening and maintaining public ways is one exclusively for determination

by the Commissioners' Court in the exercise of a sound discretion. An express approval of the tendered plat might well have involved an implied discretion; McCarten v. Sanderson, Mont., 109 P.2d 1108; Gustafson v. Wethersfield Tp. High School Dist. 191, 319 Ill.App. 255, 49 N.E.2d 311; (cf) Better Built Homes & Mortgage Co. v. Nolte, 211 Mo.App. 601, 249 S.W. 743; but this the statute does not require, an acceptance or approval being excluded by specific terms of the order under review, viz.: "It is further ordered that nothing in this judgment is to be taken to impose any obligation on the County of Dallas, to accept, improve or exercise any dominion over, nor any way obligate said County in any way in connection with the roads, streets, etc., shown on said plat above described unless they, in their discretion, by action through such Court should determine to accept such roads, etc., as a part of the County road system of Dallas County; and filing of said plat shall in no way constitute said streets any part of the road system of Dallas County, Texas." Only an authority or permission to file is contemplated by the statute upon the platter's compliance therewith, consisting of the tender of papers containing "sufficient data to enable the taxing authorities to correctly carry the land on the tax rolls and avoid duplicate or double taxation," etc.

■ On the other hand, the filing "so authorized" would not constitute an acceptance of dedication. It is well settled that, though the particular plat undertakes to dedicate streets and roads, such does not make them public roads, with consequent obligation on the Commissioners' Court, as the dedication is a mere offer; McQuillin on Municipal Corporations, Second Edition, Vol. 4, sec. 1700; 16 Am.Jur. p. 374; 66 A.L.R. 332; McLennan County v. Taylor, Tex.Civ.App., 96 S.W.2d 997.

■ Contrary to the insistence of counsel, we are now dealing with a registration statute, a law in nowise infringing upon the jurisdiction of respondent over its County roads; the controlling issue here being of whether said plat and attached filed notes contain information that sufficiently enables the taxing authority to carry the property on its tax rolls "and avoid duplicate or double taxation of the same land." Trawalter v. Schaefer, supra. We conclude that the showing made is sufficient in such respect. In consequence, there remained no discretionary act for performance by respondent save only the exercise of its ministerial or administrative duty, i. e., to authorize a filing of the plat, in the same manner as deeds, mortgages, etc., which have been acknowledged or proved according to law, are authorized to be recorded. Art. 6626.

■ Nor could the Commissioners' Court impose upon appellee additional requirements and conditions as reflected in its order of April 1945, since the Legislature has not seen fit to require such conditions. When the platter has done all that the statute demands, an authorized filing by the designated official or agency becomes a mere ministerial duty, the performance of which may be compelled by mandamus. "Thus when a judge or other officer, by his construction of a law, deprives a citizen of an unquestioned legal right, and there is no right to appeal or other adequate remedy, a court having power to issue mandamus may review the matter." 28 T.J., sec. 28, p. 565.

We further adopt the findings and conclusions of the trial court; and, overruling all points of appeal, order an affirmance of the judgment under review.

BOND, C. J., dissents.

BOND, Chief Justice (dissenting).

The conclusion of the majority affirming the action of the trial court evidently hinges on the opinion of our Supreme Court in the case of Trawalter v. Schaefer, 142 Tex. 521, 179 S.W.2d 765, 767, holding, in effect, that the statute under review (Art. 6626 as amended in 1931) is constitutional; basing the constitutionality of the Act on the provision of the emergency clause as furnishing a measure or standard to guide commissioners' courts in passing on the question as to whether or not they will approve and authorize maps or plats to be recorded. The Supreme Court did not have under review, and it did not hold that the emer-

gency clause provision that "many parcels of real estate in this State have been subdivided without establishing and showing connection with original survey or sufficient other data to locate same, and placing the property in such condition as makes it impractical for purposes of taxation, and the fact that such practices will continue unless proper legislation is enacted, * * *" is a limitation or restriction on the power of a commissioners' court to act. In that case, Schaefer presented a map or plat to Trawalter, as County Clerk of Bexar County, Texas, for the purpose of having it filed and recorded in the proper records of that county. The clerk refused to file or record the instrument solely because the Commissioners' Court of Bexar County had not authorized him to do so. When the clerk refused to file or record the map or plat, Shaefer filed suit in a district court of Bexar County as a mandamus action to compel the clerk to file and record the map or plat. The district court refused the writ. On appeal, the San Antonio Court of Civil Appeals reversed the trial court, holding the amendment unconstitutional because it failed to provide any measure or standard to guide the Commissioners' Court, in passing on the question. Our Supreme Court reversed the action of the Court of Civil Appeals and affirmed the action of the district court, holding the Act constitutional. That was the only question before the courts and in answering the contention of appellant, the Supreme Court said "When we come to consider the body of this Act, we find that it clothes commissioners' courts with power to determine whether or not maps or plats of land located outside of cities and towns shall be filed and recorded." Then the court referred to the emergency clause of the Act to meet the contention of appellant and adversely the contention of the Court of Civil Appeals. Manifestly, the emergency named in the Act was only for the purpose of a speedy enactment and the application of the statute, and not a limitation or restriction on the Commissioners' Court in the exercise of its judicial function.

The factual backgrounds authorizing courts to act on matters within their jurisdiction are seldom incorporated into statutes. Powers granted to a court generally to exercise judicial functions necessarily empower them to consider matters incident to the grant, absence of capriciousness and arbitrariness. Illustrative of the point: Art. 1731a confers full rule-making power on the Supreme Court, without limitation or restriction; Art. 1732, the Supreme Court was granted power to exercise judicial discretion "as the court may determine; Art. 1733, the Supreme Court or any justice thereof is granted the right to issue writs of mandamus "agreeable to the principles of law," and many other articles of the statute may be mentioned, showing no restriction or limitation on the power.

The "Commissioners' Court" of a county is composed of the several Commissioners together with the County Judge, who is the presiding officer of the court, when present. Such courts are constitutional courts. Const. Art. 5, sec. 1, Vernon's Ann.St. Their jurisdiction and powers are dual, some being judicial, while others are legislative and administrative. August A. Busch & Co. v. Caufield, Tex.Civ.App., 135 S.W. 244. They are a part of the judicial system of the State and also constitute the Executive Board for administering the affairs of counties. Const. Art. 5, sec. 18; American Surety Co. of New York v. Hill County, Tex.Civ.App., 254 S.W. 241, affirmed, Tex. Com.App., 267 S.W. 265. Here the Commissioners' Court, in the exercise of its constitutional and statutory authority, passed the order recited in the majority opinion, setting up a certain standard which, in their judgment, should be followed by all developers of additions outside the corporate limits of the City of Dallas and elsewhere, in order that the growth of the City and County shall not be delayed or hindered, to prevent slums and to promote the general welfare of the public, before the clerk of records should file and record same.

The statutes have clearly defined the power, prescribed the duties and imposed the liabilities of Commissioners' Courts, and from those statutes must come all the authority vested in counties. The Commissioners' Court is empowered to establish and maintain bridges and highways, sanitation and drainage, and must provide and keep such in repair; R.S. Art. 2351. In their

sphere, Commissioners' Courts are courts of general jurisdiction and the judgments of these courts are entitled to the same consideration as those of other constitutional courts. Haverbekken **v.** Coryell County, 112 Tex. 422, 247 S.W. 1086; Schiller **v.** Duncan, Tex.Civ.App., 21 S.W.2d 571. Their judgments may not be collaterally attacked. Turner v. Allen, Tex.Civ.App., 254 S.W. 630. Their limited jurisdiction extends only to matters pertaining to the general welfare of their respective counties; and their powers are only those expressly or impliedly conferred upon them by the Constitution and statutes.

The revisionary power of the district court may be invoked only where the Commissioners' Court has acted beyond its jurisdiction, or in case of a clear abuse of the discretion conferred upon it. "Unless a gross abuse of such discretion has been shown, this court is not in a position to disturb the honest discretion so exercised, for, to do so would be assuming to act as commissioners in lieu of the duly qualified and elected officers selected by the voters to represent them in that capacity." Wright v. Allen, Tex.Civ.App., 257 S.W. 980, 986. Except for a gross abuse of discretion, an injunction is not available against Commissioners' Courts in any matter within their discretion. Where jurisdiction over a matter, as here, is conferred on the Commissioners' Court, the special power or jurisdiction confided in that court must be exercised according to its discretion and, although no provision is made for reviewing its action, the district court, through its equitable jurisdiction has the power to revise the exercise of that discretion if it is clearly shown to have been grossly abused. Bourgeois v. Mills, 60 Tex. 76.

In the case here, the order passed by the Commissioners' Court was clearly within the sphere of its power to make; the court judicially exercised the discretion imposed upon it in refusing to approve and direct the filing and recording of the developer's map or plat in the records of Dallas County for reasons stated clearly in the interest of the general welfare of the county. The amendment under review takes away none of the authority of the Commissioners' Court, but expressly authorizes the "Commissioners' Court", a constitutional judicial court, to enter in the minutes of said "court" its discretionary judgment for the filing and recording of maps and plats. Hence the judgment of the trial court compelling the appellant to approve the developer's map and plat and direct its registration, against its sound judgment, was the exercise of extra-judicial power in revising the order of the Commissioners' Court; therefore the judgment of the court below should be reversed and here rendered in favor of the appellant. I respectfully register my dissent to the conclusion of the majority.