CITY OF BELLEFONTAINE NEIGHBORS, a municipal corporation, Plaintiff-Respondent,

v.

J. J. KELLEY REALTY AND BUILDING COMPANY, a corporation, and National Surety Company, a corporation, Defendants-Appellants.

No. 33408.

St. Louis Court of Appeals, Missouri.

Oct. 27, 1970.

Rehearing Denied Nov. 30, 1970.

Ziercher, Tzinberg, Human & Michenfelder, J. William Newbold, Clayton, for defendants-appellants.

Padberg, Raack, McSweeney & Slater, Godfrey Padberg, R. J. Slater, St. Louis, for plaintiff-respondent.

SMITH, Commissioner.

This matter reaches us on appeal from a judgment in a court-tried case in the amount of $4107.50 in favor of plaintiff, Bellefontaine Neighbors, a city of the fourth class, against defendant J. J. Kelley Realty and Building Company as principal, and National Surety Company as Surety.[1]

The cause of action of the City was based upon a contract between it and Kelley under which Kelley undertook the grading and paving of Toelle Lane, a public street in the City, in exchange for City's approval of a subdivision plat of Kelley and the issuance of building permits by the City.

In April 1956, Kelley was seeking to subdivide and develop a tract of land owned by it in the City to be known as Bella Hills Subdivision. The eastern edge of Bella Hills fronted on Toelle Lane from Bella Hills' southern boundary, a distance of 775 feet. From that southern boundary to Shepley Drive was approximately 1100 feet. Shepley Drive furnished the only entry to the subdivision in the City.[2] By its contract Kelley undertook to survey, grade and pave Toelle Lane as a 36 foot roadway from the southern boundary of Bella Hills to Shepley Drive. On the same day, and after execution of the contract the Board of Aldermen of the City, by ordinance, approved the subdivision plat, which plat was recorded the next day in the office of the Recorder of Deeds of St. Louis County.

Kelley commenced development of the subdivision and began improvement of

Toelle Lane in March 1957, (after approval of the engineering plans by the City) and continued such work in April 1957. On April 19, 1957 the mayor of the City, under his health and police powers, closed to vehicular traffic a railroad overpass bridge on Shepley Drive between Toelle Lane and Bellefontaine Road, and Kelley did no more work on Toelle Lane after that date. The overpass remained closed until reconstructed in 1963, but in 1959 the City completed the paving of Toelle Lane, paying for the paving from its general revenue funds. By its amended petition the City seeks to recover from defendants the expense incurred by it in completing the paving called for under the contract with Kelley. Kelley made no claim of impossibility of performance but defended in the trial court and here solely on the basis that the City had no authority to require Kelley to pave the road as a condition to the approval of the plat and the issuance of building permits, and that therefore the contract was without consideration and unenforceable.

The City also sought recovery against the Surety on a subdivider's bond executed on April 16, 1956. The pertinent provisions of the bond read as follows:

"WHEREAS under the provisions of Ordinance #28 of the City of Bellefontaine Neighbors said J. J. KELLEY REALTY AND BUILDING COMPANY IS required to furnish a bond in the sum of SEVENTY FIVE THOUSAND AND NO/100 to guarantee compliance with the provisions of said Ordinance #28 pertaining to the construction of Streets, Curbs, Sewers, Lighting, Water Mains, Fire Hydrants and Sidewalks within the aforesaid Sub-Division.

"NOW, THEREFORE, if said Principal J. J. KELLEY REALTY &

---

1. Hereinafter plaintiff will be referred to as City, defendant J. J. Kelley Realty and Building Company as Kelley and National Surety Company as Surety.

2. The record does show Toelle extending south to Chambers Road in Riverview

Gardens, but the testimony on the damage issue reflects this extension to be ten feet wide and completely undeveloped and unsatisfactory for traffic.

BUILDING COMPANY shall well and truly comply with said Ordance (sic) #28 and all other Ordinances of the City of Bellefontaine Neighbors apertaining (sic) thereto, with respect to the proper installation of Streets, Curbs, Sewers, Lighting, Water Mains, Fire Hydrants and Sidewalks within the aforesaid Sub-Division at the location of said Bella Hills Sub-Division, then this obligation shall be void; otherwise to remain in full force and effect."

Surety, in addition to the defenses raised by Kelley, contends that its liability as found by the trial court is predicated on the contract between Kelley and the City, and such contract is not referred to in the bond, so a finding of liability as to the Surety would violate the parol evidence rule.

Ordinance 28 is the City's zoning ordinance. It contains Article XV prescribing subdivision regulations. The resolution of the dispute here, in the final analysis, turns on whether the City was empowered to enact Article XV of the ordinance at the time of its adoption in 1951.

The question of liability was submitted to the trial court on a stipulation of facts in April 1964. In June 1967 the court entered its findings of fact and conclusions of law which essentially were that Ordinance 28 was valid, the contract was valid and enforceable to the extent it required Kelley to pave the roadway abutting its property to the centerline of the street, and that Surety was liable on its bond for the cost of that much paving. Hearing was thereafter held on the amount of damages sustained by the City as a result of bringing to grade and paving the 775 feet abutting Kelley's property to the centerline of Toelle Lane. On July 9, 1968 judgment was entered against both Kelley and Surety for $4107.50. Defendants do not challenge the amount of damages assessed but challenge here only the determination of liability. The City has not appealed so we are not confronted directly with the correctness of the trial court's determination of partial enforceability.

Defendants' major contention is that Kelley had complied with all valid requirements to obtain the building permits and the City had the legal obligation to issue them. They then assert the well recognized rule that a promise to do that which one is already legally obligated to do cannot serve as consideration for a contract. In re Wood's Estate, 288 Mo. 588, 232 S.W. 671 [4, 5]; Lingenfelder v. Wainwright Brewery Co., 103 Mo. 578, 15 S.W. 844. Weber Implement & Automobile Co. v. Goswell, Mo.App., 299 S.W. 152 [1, 2]. We have no quarrel with the proposition advanced, if in fact the City has only promised to do that which it was legally obligated to do.

We turn first to the contract to determine what consideration, valid or invalid, the City gave. Two paragraphs of the contract are relevant to that question.

"WHEREAS, Builder is the owner of a tract of land located within the corporate limits of City and is desirous of subdividing the same and securing permits to erect buildings thereupon and City is willing to grant said building permits upon certain terms and conditions, it is therefore agreed by and between the parties hereto as follows:

\*     \*     \*     \*     \*     \*

6. In consideration of the execution of this contract and the covenants expressed herein, the City will permit the construction of 70 houses on Builder's property, known as BELLA HILLS SUBDIVISION, subject to completion of the improvements required herein and subdivision improvements required by the Ordinances of the City and set forth on the development plat of said BELLA HILLS SUBDIVISION."

We conclude that the City's obligations under this contract included at least two distinct features, i. e. 1) issuance of building permits and 2) approval of Kelley's plat and authorization for the subdividing of the land in question. Under Chapter 445 RSMo. 1949, such approval was required before the

plat of the subdivision could be recorded with the recorder of deeds, and recording was a condition precedent to offering for sale or selling any lot in the subdivision. The provisions of Chapter 445 will be discussed more fully hereafter, but for present purposes suffice it to say that the City agreed to give its approval to the subdividing of the land, an approval required by statute before subdivision could proceed.

The contract provided that the City would permit construction of 70 houses on builder's property. This contemplated more than the mere issuance of building permits, it also required City approval of the plat. Without city approval there could be no subdivision of the land and no construction or sale of houses in the subdivision.

The City's subdivision regulations (Article XV of its Zoning Code) require that no plat shall be recorded with the Recorder of Deeds until approved by the Zoning Commission and the City. Under Section 5 of Article XV certain improvements are required to be completed before final approval of the plat by the City. These include permanent boundary markers, street improvements, sidewalks, water lines, sewers, and streets. The street improvements required are that "All street rights-of-way shall be graded full width and the roadway improved by surfacing."

That section further provides that: "In lieu of actual completion of such improvements, the subdivider may file with the Zoning Commission a surety bond to secure to the City the actual construction of such improvements in a manner satisfactory to the City and within a period specified by the Zoning Commission, but such period shall not exceed two (2) years."

The agreement here provided for immediate approval of Kelley's plat and issuance of building permits upon his agreement to pave Toelle Lane and put up a bond to insure performance. Whether under the ordinance the City could require him to pave all of Toelle Lane (as the contract provided) it is unnecessary to decide in view of the judgment which is limited to the cost of paving that portion of Toelle Lane actually within the subdivision. It is certainly clear, that under its ordinance, the City could condition the final approval of the subdivision plat upon Kelley paving that portion of Toelle Lane within the subdivision.

The critical issue then is whether the City had the power to enact the ordinance under which it proceeded. It is, of course, axiomatic that a municipal corporation has only those powers expressly granted, those necessarily or fairly implied in or incident to powers expressly granted, and those essential to declared objects and purposes of the corporation. Bull v. McQuie, 342 Mo. 851, 119 S.W.2d 204 [1–3]; State ex rel. City of Blue Springs v. McWilliams, 335 Mo. 816, 74 S.W.2d 363 [1, 2].

Defendants point to Section 79.450 RSMo. 1949 and find a total silence concerning power in cities of the fourth class to regulate subdivisions. But in determining what powers City had we are not limited to the provisions of Chapter 79 if the legislature has in other statutes conferred additional powers. Such power has, we find, been conferred by § 445.030 RSMo. 1949. That section is set out in full in the margin.[3]

3. Plat to be acknowledged and recorded—acceptance by city.—Such map or plat shall be acknowledged by the proprietor before some official authorized by law to take acknowledgment of conveyances of real estate, and recorded in the office of the recorder of deeds of the county in which the land platted is situated; provided, however, that if such map or plat be of land situated within the corporate limits of any incorporated city, town or village, it shall not be placed of record until it shall have been submitted to and approved by the common council of such city, town or village, by ordinance, duly passed and approved by the mayor, and such approval endorsed upon such map or plat under the hand of the clerk and the seal of such city, town, or village; nor until all taxes against the same shall have been paid; and before approving such plat, the common council may,

■ It should be noted that prior to amendment of that statute in 1943 it ended after the clause " * * * nor until all taxes against the same shall have been paid * * *." The prior statute had been construed as requiring the council to perform a ministerial act in approving the plat with no discretion vested in the council. See Better Built Homes & Mortgage Co. v. Nolte, 211 Mo.App. 601, 249 S.W. 743. This court there rejected the argument that zoning ordinances of municipalities could authorize the common council to refuse approval of a plat which conformed to the statutory provisions found in the then preceding section concerning parallel streets and continuation of streets. By the amendment of 1943, the legislature specifically authorized "any incorporated city, town or village" to require changes of a plat which conflicted with the municipality's zoning or street development plan. It further authorized the municipality to require changes in the discretion of the council where the plat failed to meet the requirements of any "duly enacted ordinances of such city, town or village, appertaining to the laying out and platting of subdivisions of land within their corporate limits." Unless the last quoted phrase was a complete nullity, it must be construed to grant to cities, towns and villages the power to enact ordinances regulating the laying out and platting of subdivisions. The only reference to subdivision control found in the 1949 statutes relates to first class cities. Section 88.163 RSMo. 1949. It clearly would have no reference to towns and villages or most cities. The power to require changes and alterations to a plat is the power to disapprove the plat. We cannot presume that the legislature intended to allow disapproval of plats where the disapproval was based upon "duly enacted ordinances" which the municipalities had no power to enact. The only logical interpretation of the amendment of 1943 is that the legislature intended to grant to cities, towns and villages the power to enact subdivision control ordinances.

■ We cannot conclude that the ordinance enacted went beyond the grant of power made. The platting of subdivisions requires specific identification of public use areas including streets. Section 445.010 RSMo. 1949. The authority of the common council to require changes in the plat is quite broad and highly discretionary. It may be based upon a zoning or street development plan enacted or which may appear desirable. Section 445.030 RSMo. 1949. The development of streets is a matter peculiarly within the province of the City. The mere desire of a subdivider to develop land does not give him the right to compel development and improvement of streets at public expense within the area owned by him. The City may refuse to permit such subdivision development unless that expense is borne by the subdivider. Article XV of Ordinance 28 authorizes such refusal and is within the powers of the City under § 445.030 RSMo. 1949.

■■ Defendants contend that the enactment in 1963 of § 89.410 RSMo. 1959 dealing with regulations governing subdivisions of land by municipalities demonstrates that no power to regulate subdivisions by cities of the fourth class previously existed. That section is a part of a comprehensive planning statute which prescribes in detail the procedure for city planning and the scope of the powers of a municipality in the area of city planning. The enactment in 1963 of a more specific comprehensive statute does not require a conclusion that the power to regulate subdivisions did not exist previously. The specificity of the 1963 act may be considered to restrict the broad grant of power given by § 445.030 and to establish the procedures for carrying out the regulation of subdivisions authorized by § 445.030.

in its discretion, require such changes or alterations thereon as may be found necessary to make such map or plat conform to any zoning or street development plan which may have been adopted

or appear desirable, and to the requirements of the duly enacted ordinances of such city, town or village, appertaining to the laying out and platting of subdivisions of land within their corporate limits.

Where the legislature has authorized a municipality to exercise a power and prescribed the manner of its exercise, the right to exercise the power in any other manner is necessarily denied. State ex rel. City of Blue Springs v. McWilliams, *supra*, 74 S.W.2d 363 [3]. Not until the 1963 enactment of § 89.410 RSMo 1959, did the legislature purport to limit the manner of the exercise of the power granted in § 445.030.

◼ We conclude that the City had the power in 1951 to enact Article XV of Ordinance 28. It therefore follows, that under that ordinance the City had the authority to refuse to approve Kelley's plat until completion of the streets or in lieu thereof to agree to approve such plat upon Kelley's promise to perform certain work and his posting of bond to secure such performance.

◼ We find it unnecessary to determine whether under the ordinance and the enabling statute the City could require the paving of all of Toelle Lane as a condition of approval of the plat. The contract required Kelley to survey, excavate, and pave Toelle Lane and "to abide by and conform to all of the provisions of subdivision regulations set forth in Ordinance No. 28." These contract provisions are separable. The decision of the trial court upheld that portion of City's claim involving the paving of Toelle Lane within the subdivision. Such paving was required under the provisions of the contract requiring compliance with regulations of Ordinance 28. If the remaining performance under the contract respecting paving of Toelle Lane outside the subdivision was beyond the power of the City to require (which we do not decide) that would not preclude enforcement of or recovery under

those obligations of the contract which the City could require before approving the plat. See Sexton v. North Missouri Cent. R. Co., Mo.App., 194 S.W. 1081 [2].

◼ We also reject Surety's contention that it would violate the parol evidence rule to impose liability under the bond. The contract here, to the extent it was upheld by the trial court, pertained to work required of Kelley under the ordinance. The bond was to secure performance of the obligations of Kelley under the ordinance. The Surety is presumed to have knowledge of the ordinance and the obligations thereunder, and to know that the ordinance required grading and paving of streets in the subdivision. The bond was given to protect the City upon the failure of Kelley to perform the paving required under the ordinance. It is of no concern to Surety that Kelley assumed additional obligations by contract, for here recovery has been allowed only for Kelley's failure to perform obligations required by ordinance. The Surety's obligation and liability exists because Kelley failed to perform those things required by ordinance, which is precisely what Surety's bond covered and for which it received a premium.

Judgment affirmed.

PER CURIAM:

The foregoing opinion by SMITH, C., is adopted as the opinion of this court. Accordingly, the judgment is affirmed.

WOLFE, P. J., and BRADY and DOWD, JJ., concur.