

## ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

January 28, 2004

The Honorable Kenneth Armbrister
Chair, Committee on Natural Resources
Texas State Senate
Post Office Box 12068
Austin, Texas 78711

Opinion No. GA-0139

Re: The status of subdivision roads dedicated for public use in a county with fewer than 50,000 people where the commissioners court approved the subdivision plat for filing but did not accept the roads for county maintenance (RQ-0087-GA)

Dear Senator Armbrister:

On behalf of a citizen, Leonard Kunefke Jr., you ask several questions about the status of certain property dedicated for use as public roadways in a subdivision plat in a county with fewer than 50,000 people where the commissioners court approved the plat for filing but did not accept the roads for county maintenance.[1]

## I.      Background Information

Mr. Kunefke states that the property was initially dedicated in a plat for the Enchanted Harbor subdivision that was filed in 1971. *See* Kunefke Letter, *supra* note 1, at 1. The plat dedicated "'the use of roads, streets, waterways, and passageways to the public forever.'" *Id.* (quoting Enchanted Harbor § 1 plat dedication (Sept. 13, 1971)). Although the Calhoun County Commissioners Court approved the plat for filing, the court stated in writing that the "'streets are not accepted for maintenance at this time.'" *Id.* (quoting Enchanted Harbor plat, signed by Willis Jetton, Calhoun County Judge (Sept. 13, 1971)). In 1972 Calhoun County (the "County") adopted an order that it would accept no road and street "hereafter created or dedicated" for county maintenance unless the road or street meets specific "minimum specifications and standards."[2] *See id.* The Enchanted Harbor subdivision was purchased by another developer, who in 1982 submitted

---

[1] *See* Letter from Honorable Kenneth Armbrister, Chair, Committee on Natural Resources, Texas State Senate, to Susan Gusky, Chair, Opinion Committee, Office of Attorney General (July 28, 2003) (on file with Opinion Committee); Letter from Leonard Kunefke Jr. to Honorable Kenneth Armbrister, Chair, Committee on Natural Resources, Texas State Senate (July 21, 2003) (on file with Opinion Committee) [hereinafter Kunefke Letter].

[2] Order of Calhoun County Commissioners Court (Oct. 13, 1972), attached to Letter from Leonard Kunefke Jr. to Nancy S. Fuller, Chair, Opinion Committee, Office of Attorney General (Sept. 4, 2003) (on file with Opinion Committee) [hereinafter Kunefke Brief].

a new plat for the subdivision, now named "Sunilandings," which the Calhoun County Commissioners Court approved "*with the provision that the streets were not to be accepted for county maintenance until they were constructed in accordance with the County regulations.*" *Id.* at 2. Although this developer constructed several of the subdivision's streets in accordance with county regulations, and these streets were subsequently accepted for county maintenance, four streets remained unconstructed: a portion of Dolphin Drive, Kingfish Landing, Bluefish Landing, and Tarpon Landing. *See id.* The developer sold these four "unconstructed streets, their easements, and [all] remaining undeveloped property" to a new owner, who eventually declared bankruptcy. *Id.* In 2000 the bankruptcy trustee abandoned the four streets and their easements under 11 U.S.C. § 554, which permits a trustee to "abandon any property of the estate that is burdensome . . . or . . . of inconsequential value and benefit." 11 U.S.C. § 554(a) (2000); Kunefke Letter, *supra* note 1, at 2. The abandoned properties reverted to the debtor, *see Catalano v. C.I.R.*, 279 F.3d 682, 684 (9th Cir. 2002), and were sold at a sheriff's sale to satisfy a judgment against the debtor. *See* Kunefke Letter, *supra* note 1, at 2. The purchaser subsequently sold the properties to Mr. Kunefke and his wife. *See id.*

Mr. Kunefke alleges that he asked the Calhoun County Appraisal District to add the unconstructed streets to the county's tax rolls in April 2002. *See id.* The appraisal district "refused . . . and responded that the abandonment by the bankruptcy court did not change the dedication and that [Mr. and Mrs. Kunefke's] properties were public right of ways, even though the streets had never been constructed or accepted into the county road system for maintenance." *Id.* Also in April 2002, according to Mr. Kunefke, he "received a letter from a county commissioner declaring [the] properties [to be] public streets." *Id.*

Calhoun County "does not acquiesce [in] or condone any of the many statements made by Mr. Kunefke."[3] Also, one investor in the subdivision, who owns property in the subdivision as part of a group of investors, has submitted a letter stating that the "portion of Dolphin Drive" Mr. Kunefke claims as private property "is the only access to property" this property owner "and several others own."[4] This investor further states that Mr. Kunefke "blocked egress" from his Dolphin Drive property, resulting in a call to the sheriff, who filed an incident report. Bolleter Letter, *supra* note 4, at 1. Counsel for Calhoun County informed Mr. Kunefke, by letter, that the county commissioners court has authority to "remove all obstructions from public roads," even though the County had not accepted the roads for county maintenance.[5] The County further "directed" Mr. Kunefke "to desist from preventing or attempting to prevent the public's use of the streets and right-of-ways in the Sunilanding subdivision . . . including, but not limited to Dolphin Drive, Kingfish, Tarpon and Bluefish Landing." Calhoun County Letter, *supra* note 5, at 1.

---

[3]Letter from John W. Griffin Jr., Houston, Marek & Griffin, L.L.P., representing Calhoun County, to Nancy S. Fuller, Chair, Opinion Committee, Office of Attorney General (Aug. 28, 2003) (on file with Opinion Committee).

[4]Letter from R.L. Bolleter to Nancy S. Fuller, Chair, Opinion Committee, Office of Attorney General, at 2 (Aug. 21, 2003) (on file with Opinion Committee) [hereinafter Bolleter Letter].

[5]Letter from John W. Griffin Jr., Houston, Marek & Griffin, L.L.P., representing Calhoun County, to Leonard Kunefke Jr., at 1 (May 16, 2002) (on file with Opinion Committee) [hereinafter Calhoun County Letter].

Mr. Kunefke's letter and the briefing we have received make clear that this request concerns a highly controversial issue about which conflicting allegations have been made. This office does not determine questions of fact. *See* Tex. Att'y Gen. Op. No. GA-0003 (2002) at 1 (stating that the opinion process does not determine facts). For purposes of this opinion only, we assume that the property at issue here, consisting of Kingfish Landing, Bluefish Landing, Tarpon Landing, and a portion of Dolphin Drive, have been dedicated to the public as streets on the various plats. While the Calhoun County Commissioners Court has approved the plats for filing, we assume that it has not accepted the dedications on these streets because they have never been constructed in accordance with county requirements. We further assume that Mr. and Mrs. Kunefke purchased the property, as well as all drainage easements. Finally, we assume that the portion of Dolphin Drive the Kunefkes purchased is the only means of ingress and egress for certain property owners. Copies of the plats we have received indicate that the other unconstructed roads the Kunefkes own may provide the sole means of ingress and egress for other properties, other than the canals that are indicated on the plats.

## II.     Issues Raised

### A.     A county's authority to remove an obstruction from a road that has been dedicated to the public use but not accepted for county maintenance

Mr. Kunefke asks several questions about the status of his property. *See* Kunefke Letter, *supra* note 1, at 1. He asks first whether, "[i]n a county of 50,000 or less, . . . the commissioners[] court ha[s] the power to open a platted subdivision street, dedicated for public use, if the street has never been constructed (graded or paved), maintained, used by the public, placed on official maps or accepted for county maintenance." *Id.* He asks second whether "[i]n a county of 50,000 or less, . . . the commissioners[] court ha[s] the power to remove any obstruction from a platted subdivision street, dedicated for public use, if the street has never been constructed (graded or paved), maintained, used by the public, placed on official maps or accepted for county maintenance." *Id.* Given that Mr. Kunefke obstructed access to a property dedicated to the public as a street and that the County opened the property by ordering the obstruction removed, we believe these two questions raise the same issue and can be answered together.

In general, a landowner who divides his or her tract into two or more parts must prepare a plat to lay out:

(1) a subdivision . . . ;

(2) lots; or

(3) streets, alleys, . . . or other parts of the tract intended to be dedicated to public use or for the use of purchasers or owners of lots fronting on or adjacent to the streets, alleys, . . . or other parts.

TEX. LOC. GOV'T CODE ANN. § 232.001(a) (Vernon Supp. 2004). The plat must be filed and recorded in the appropriate county clerk's office, *see id.* § 232.0015(d), and the county commissioners court must approve the plat "by an order entered in" its minutes, *id.* § 232.002(a).

A commissioners court's approval of a plat for filing purposes does not constitute acceptance of the dedicated streets and roads, however. *See Miller v. Elliott*, 94 S.W.3d 38, 45 (Tex. App.–Tyler 2002, pet. denied); *Comm'rs Ct. v. Frank Jester Dev. Co.*, 199 S.W.2d 1004, 1007 (Tex. Civ. App.–Dallas 1947, writ ref'd n.r.e.). A dedication is a mere offer; the commissioners court must accept it for the street or road to become a county road. Dedication of streets and roads by a particular plat does not make them county roads, such that the county has an obligation to maintain them, unless the county accepts the dedication. *See Frank Jester Dev. Co.*, 199 S.W.2d at 1007; Tex. Att'y Gen. LO-95-064, at 1 ("A road does not become part of the county road system merely by virtue of a dedication of the road to the public in a subdivision plat. The dedication must be accepted by the county."). Acceptance may be express; it may also be implied if the county uses or maintains the road. *See Viscardi v. Pajestka*, 576 S.W.2d 16, 19 (Tex. 1978); *Miller*, 94 S.W.3d at 45; *Chambers County v. Frost*, 356 S.W.2d 470, 478 (Tex. Civ. App.–Waco 1962, writ ref'd n.r.e.). Dedications that are not accepted are not county roads, and a county has no authority to order the removal of an obstruction from a road that is not a county road. *See* Tex. Att'y Gen. Op. No. M-534 (1969) at 4. In this case, we have no evidence that the County has accepted the roads; accordingly, the County has no authority to order obstructions removed.

Nevertheless, the purchasers of land abutting the streets may have an enforceable private easement that can be enforced, resulting in the removal of obstructions. A conveyance of real property "by reference to a map or plat showing abutting roads or streets results in the purchaser, or one holding under him, acquiring a private easement in the roads or streets shown on the plat." *Horne v. Ross*, 777 S.W.2d 755, 756 (Tex. App.–San Antonio 1989, no writ); *see Dykes v. City of Houston*, 406 S.W.2d 176, 181 (Tex. 1966) (stating that if a seller sells lots by referring to a map on which a street is defined, "this operates as an immediate dedication of the street"). Property owners holding such a conveyance have a "private easement over" the dedicated areas and "'have a right to have the street thrown open forever,'" *Dykes*, 406 S.W.2d at 181 (quoting *Oswald v. Grenet*, 22 Tex. 94, 100 (1858)), not for their use only but for "all persons, whatever, as their occasions may require or invite." *Adams v. Rowles*, 228 S.W.2d 849, 851 (Tex. 1950). The "proprietor," or in this case, the street owner, may not interfere with the public use. *See Adams*, 228 S.W.2d at 851. Although property owners may surrender their easements or the plat may be revised, we have no evidence that either of these events has occurred here.

Thus, we conclude that property owners whose deeds specifically reference the subdivision plats hold a private easement that they may enforce against the Kunefkes. *See id.* A deed for a lot abutting Dolphin Drive—one of the properties affected by Mr. Kunefke's actions—specifically references the Sunilandings subdivision plat, which clearly shows Dolphin Drive and the other roads at issue here and which dedicates such roads to the public use.[6] The fact that the County has not accepted the dedication of the roads is irrelevant to the abutting property owners' right.

---

[6]*See* Special Warranty Deed and Plat, attached to Facsimile from Gus Koerner, Batco Inc., to Kym Oltrogge, Assistant Attorney General, Office of Attorney General (Sept. 23, 2003) (on file with Opinion Committee).

### B.    Taxability of privately owned streets dedicated to public use

Mr. Kunefke asks whether "the Calhoun County taxing authority ha[s] the power to deny the taxation of these properties and to proclaim them public streets." Kunefke Letter, *supra* note 1, at 1. Whether the Calhoun County taxing authority has "proclaim[ed] the streets" at issue here "public streets" or simply articulated the fact that these streets have been laid out on an approved subdivision plat and dedicated to public use (even if not accepted by the county) is a question of fact that we will not answer. *See* Tex. Att'y Gen. Op. No. GA-0003 (2002) at 1 (stating that the opinion process does not determine facts). We will respond only to the legal issue here: whether these streets are, as a matter of law, exempt from taxation.

We conclude that the property at issue here is not exempt from taxation and must, therefore, be taxed. We have received no information that the property at issue here is county-owned. All real property "that this state has jurisdiction to tax is taxable unless exempt by law." TEX. TAX CODE ANN. § 11.01(a) (Vernon 2001). Generally, county-owned property that is used for public purposes is exempt from taxation. *See id.* § 11.11(a) (Vernon Supp. 2004). Calhoun County has not accepted the dedication of the streets at issue here, and even if it had, the County may not own the streets for tax-exemption purposes. Moreover, the Kunefkes appear to own the streets.

### C.    Authority of an individual commissioner or a commissioners court acting as a whole to declare a street "open to the general public"

Mr. Kunefke asks two final questions, which we believe can be answered together. He asks whether "an individual county commissioner ha[s] the authority to claim Dolphin Drive, Kingfish Landing, Bluefish Landing and Tarpon Landing as rights of way open to the general public" and whether "the commissioners[] court (in a county of less than 50,000) ha[s] the authority to claim Dolphin Drive, Kingfish Landing, Bluefish Landing and Tarpon Landing as rights of way open to the public without county maintenance." Kunefke Letter, *supra* note 1, at 1. Whether either an individual county commissioner or the commissioners court acting as a whole has "claimed" these streets as open to the public or simply referred to the fact that the subdivision plat dedicates the streets to public use is a question of fact that we cannot resolve. *See* Tex. Att'y Gen. Op. No. GA-0003 (2002) at 1 (stating that the opinion process does not determine facts).

With respect to county roads, an individual commissioner's authority depends in part on the system of county road administration the county has chosen. Chapter 252, Transportation Code, sets out four different systems. *See* TEX. TRANSP. CODE ANN. §§ 252.101(a), .201(a) (Vernon 1999) (providing that subchapters B and C do not apply to Calhoun County). We understand that Calhoun County has established an ex officio road commissioner system, as subchapter A authorizes.[7] Under the system, each county commissioner "is the ex officio road commissioner" of his or her precinct. *Id.* § 252.003. The county commissioners court is required to "adopt a system for laying out, working on, draining, and repairing the public roads." *Id.* § 252.005(a). An ex officio road commissioner then is responsible for directing the "laying out of new roads" and the "construction . . . of roads." *Id.* § 252.006(b)(1)-(2).

---

[7]*See* Telephone Conversation with Rebecca Rozmus, Houston, Marek & Griffin, L.L.P. (Oct. 23, 2003).

Even under an ex officio road commissioner system, a county commissioner, acting alone in his or her capacity as an ex officio road commissioner, has no authority to accept a street for county maintenance. In general, a county can act only through its commissioners court, and an individual commissioner has "no authority to bind the county" by his or her separate action. *Canales v. Laughlin*, 214 S.W.2d 451, 455 (Tex. 1948); *accord Nueces County v. de Pena*, 953 S.W.2d 835, 836-37 (Tex. App.–Corpus Christi 1997, no writ). Under the ex officio road commissioner system, the commissioners court is responsible for adopting a system for laying out county roads, and an ex officio commissioner is responsible for directing the roads' layout. *See* TEX. TRANSP. CODE ANN. §§ 252.005(a), .006(b)(1) (Vernon 1999).

On the other hand, a commissioners court, acting as a body, has authority to accept a road for county maintenance, but it must do so in compliance with statutory requirements. *Cf. Chesser v. Grooms*, 302 S.W.2d 488, 491 (Tex. Civ. App.–Beaumont 1957, no writ) (finding that the Orange County Commissioners Court was within its rights in rejecting a subdivision developer's offer of dedication of the streets or of making the streets part of the county road system). Chapter 281 of the Transportation Code sets out four methods by which a county with a population of 50,000 or less, such as Calhoun County, may acquire a public interest in a private road. *See* TEX. TRANSP. CODE ANN. §§ 281.001-.002 (Vernon 1999); *see also id.* § 281.003(a) (setting out the requirements of a dedication for chapter 281's purposes); BUREAU OF THE CENSUS, U.S. DEPT. OF COMMERCE, 2000 CENSUS OF POPULATION, *available at* http://quickfacts.census.gov/pfd/states/48/48057.html (Calhoun County population: 20,647). Under section 281.002,

[a] county may acquire a public interest in a private road only by:

(1) purchase;

(2) condemnation;

(3) dedication; or

(4) a court's final judgment of adverse possession.

TEX. TRANSP. CODE ANN. § 281.002 (Vernon 1999). Although section 281.002 was adopted in 1981, ten years after the original Enchanted Harbor plat was filed, *see* Act of June 1, 1981, 67th Leg., R.S., ch. 613, § 2, 1981 Tex. Gen. Laws 2412, 2412, we understand Mr. Kunefke to ask how the Calhoun County Commissioners Court may now claim the streets at issue "as rights of way open to the public," Kunefke Letter, *supra* note 1, at 1.

Chapter 253 of the Transportation Code provides an additional means by which a commissioners court may claim a private road in a subdivision in an unincorporated area as part of the county road system. Chapter 253, which applies to all counties regardless of size, provides that a county may improve a private subdivision road if the commissioners court determines the improvements are necessary for county residents' health, safety, or welfare. *See* TEX. TRANSP. CODE ANN. § 253.003 (Vernon Supp. 2004); *see id.* § 253.002 (Vernon 1999) (defining the term "improvement"). Under section 253.011, once a county has improved the road, it becomes a county road, and the county must continue to maintain the road. *See id.* § 253.011 (Vernon 1999).

In our opinion, sections 253.011 and 281.002 are cumulative, and a commissioners court in a county with a population of 50,000 or less may acquire an interest in a road under either section 253.011 or 281.002.[8] *See* TEX. GOV'T CODE ANN. § 311.021(2) (Vernon 1998) (stating that the legislature is presumed to have intended an entire statute to be effective). Section 281.002, which provides that a county may acquire an interest in a private road *only* by the means listed there, is specific to counties with populations of 50,000 or less, but applies to roads throughout the county. *See* TEX. TRANSP. CODE ANN. §§ 281.001-.002 (Vernon 1999). Section 253.011, on the other hand, applies to all counties, but only to roads in or accessing subdivisions in unincorporated areas. *See id.* §§ 253.001-.011. Section 253.011 further provides a means by which a county may acquire a road that is not listed in section 281.002. *See id.* § 253.011. Neither is more specific than the other because they apply to different subjects. *See* TEX. GOV'T CODE ANN. § 311.026 (Vernon 1998) (providing for a situation in which general and special statutes conflict). Moreover, the problem that chapter 253 addresses applies in counties to which chapter 281 applies: according to a bill analysis, the substance of chapter 253 is designed to remedy the situation "[w]hen roads in unincorporated subdivisions need repair, [but] the developers who originally built the roadways [are] unavailable to do the work." SENATE COMM. ON INTERGOVERNMENTAL RELATIONS, BILL ANALYSIS, Tex. S.B. 314, 71st Leg., R.S. (1989).

We have received no information suggesting that Calhoun County has complied with either section 281.002 or 253.011 with respect to the Kunefkes' property. Unless and until it does so, it may not claim an interest in them.

---

[8]Section 258.002 of the Transportation Code, adopted by the Seventy-eighth Legislature in 2003, does not appear to apply here. *See* Act of May 20, 2003, 78th Leg., R.S., ch. 236, § 1, sec. 258.002, 2003 Tex. Gen. Laws 1070, 1070-71. Under section 258.002, a county may adopt "a county road map that includes each road in which the county claims the existence of a public interest." TEX. TRANSP. CODE ANN. § 258.002(a) (Vernon Supp. 2004). If the county's claim is contested, the county must "provide[] written records or other information documenting the county's continuous maintenance of the road beginning before September 1, 1981." *Id.* § 258.002(b). Because Calhoun County has not maintained the roads at issue here, it could not claim an interest in them in a county road map proposed under section 258.002.

## S U M M A R Y

A county has no authority to order the removal of an obstruction of a road that has not been accepted into the county road system. But, as a consequence of a real property conveyance that expressly refers to a plat showing abutting roads or streets, the purchaser acquires a private interest in the roads shown on the plat. A property owner holding such a deed has a right to enforce his or her private easement.

Property that has been dedicated to the public for use as streets but that has not been accepted by the county is not county-owned for tax-exemption purposes. The county must, consequently, levy ad valorem taxes on the property.

Only a commissioners court, acting as a body, has authority to accept a street for county maintenance. A commissioners court in a county with a population of 50,000 or less may acquire an interest in a road under section 253.011 or 281.002 of the Transportation Code.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Kymberly K. Oltrogge
Assistant Attorney General, Opinion Committee